UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

FRED MOGUL,

                    Plaintiff,

     -against-

NEW YORK PUBLIC RADIO, WNYC,
and AUDREY COOPER,

                    Defendants.

------------------------------------------------------------------ X

No. 21-cv-5882 (CM)
[rel. 21-cv-4972 (CM)]


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND
TO SUPREME COURT OF THE STATE OF NEW YORK PURSUANT TO 28 U.S.C.
§§ 1446 & 1447 OR OPPORTUNITY TO AMEND AND THEN REMAND TO
SUPREME COURT**

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

    I. Defendants Failed to Timely Remove Pursuant to 28 U.S.C. § 1446(b) ......................... 2

    II. The Court Lacks Subject Matter Jurisdiction..................................................................... 4

    III. None of Plaintiff's Claims is Preempted by the LMRA .................................................. 6

        1. Defamation (First Cause of Action).............................................................................. 8

        2. Wrongful Termination (Second Cause of Action)....................................................... 10

        3. Violation of New York Labor Law (Third Cause of Action) ...................................... 11

        4. Breach of Implied Covenant of Good Faith and Fair Dealing (Fourth Cause of
           Action) .......................................................................................................................... 14

        5. Intentional Infliction of Emotional Distress (Fifth Cause of Action) .......................... 14

    IV. Supplemental Jurisdiction............................................................................................... 16

    V. Amendment of the Complaint........................................................................................... 17

    V. CONCLUSION ................................................................................................................. 18

# TABLE OF CASES

## Cases

*Adonna v. Sargent Mfg. Co.*, 485 F. App'x 445 (2d Cir. 2012).....................................................15

*Arroyo v. NYU Langone Hosp.*, 19-cv-1624 (KPF), 2019 U.S. Dist. LEXIS 189531 (S.D.N.Y. Oct. 31, 2019) ............................................................................................................... passim

*Berger v. N.Y. Univ.*, No. 19-CV-267 (JPO), 2019 U.S. Dist. LEXIS 129691 (S.D.N.Y. Aug. 2, 2019) .......................................................................................................................... 7

*Bryant v. Verizon Communs., Inc.*, 550 F. Supp. 2d 513 (S.D.N.Y. 2008) .................................. 12

*Buttigieg v. 40 W. 67th St. Corp.*, No. 17-cv-620 (GBD), 2017 U.S. Dist. LEXIS 223143 (S.D.N.Y. Apr. 24, 2017)................................................................................................................... 15

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988)................................................................ 17

*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987)...................................................................... 13

*Coakley v. Kingsbrook Jewish Med. Ctr.*, 2017 U.S. Dist. LEXIS 13060 (E.D.N.Y. Jan. 28, 2017) ........................................................................................................................................ 16

*Commonwealth Advisors Inc. v. Wells Fargo Bank, Nat'l Ass'n*, No. 15-CV-7834 (JMF), 2016 WL 3542462 (S.D.N.Y. June 23, 2016) ....................................................................................... 3

*Cortese v. Skanska Koch, Inc.*, No. 20-cv-1632 (LJL), 2021 U.S. Dist. LEXIS 24152 (S.D.N.Y. Feb. 8, 2021) ............................................................................................................................. 11

*Crowley v. First Step, Inc.*, No. 3:04 cv 01486 (MRK), 2004 U.S. Dist. LEXIS 24582 (D. Conn. Dec. 6, 2004).............................................................................................................................. 16

*Cruz v. United Auto. Workers Union Local 2300*, No. 3:18-CV-0048 (GTS/ML), 2019 U.S. Dist. LEXIS 119662 (N.D.N.Y. July 18, 2019) .......................................................................... 15

*Ellis v. Harpercollins Publrs., Inc.*, 99-cv-12123 (DLC), 2000 U.S. Dist. LEXIS 8598 (S.D.N.Y. June 21, 2000)............................................................................................................................. 12

*Foy v. Pratt & Whitney Grp.*, 127 F.3d 229 (2d Cir. 1997)............................................................ 7

*Gyecsek v. J.P. Hogan Coring & Sawing, Corp.*, No. 18 Civ. 1023 (PAC), 2019 U.S. Dist. LEXIS 36074 (S.D.N.Y. Mar. 6, 2019) .......................................................................................... 11

*Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 332 (S.D.N.Y. 2012) ............................... 11

*L.Y.E. Diamonds Ltd. v. Gemological Inst. of Am. Inc.*, No. 16-CV-3766 (VSB), 2017 WL 1207839 (S.D.N.Y. Mar. 31, 2017) ...................................................................................................... 3

*Livadas v. Bradshaw*, 512 U.S. 107 (1994) ............................................................. 7

*Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269 (2d Cir. 1994) .............................. 2

*Medina v. Waste Connections of N.Y.*, No. 19-CV-291 (RA), 2019 U.S. Dist. LEXIS 187842 (S.D.N.Y. Oct. 29, 2019) ............................................................... 8, 12

*Moscovitch v. Danbury Hospital,* 25 F. Supp. 2d 74 (D.Conn. 1998)...................... 16

*Najmiev v. Special Touch Home Care Servs.*, No. 17-CV-01386 (VEC), 2017 U.S. Dist. LEXIS 108634 (S.D.N.Y. July 12, 2017) ............................................... 6

*Panczykowski v. Laborers' Int'l Union of N. Am.*, 2 F. App'x 157 (2d Cir. 2001)— ................... 9

*Pezzo v. Air & Liquid Sys. Corp.*, No. 20-CV-10433 (JPO), 2021 U.S. Dist. LEXIS 127502 (S.D.N.Y. July 8, 2021) ................................................................. 3

*Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208 (2d Cir. 2013)................................ 4

*Ritchie Capital Mgmt., L.L.C. v. BMO Harris Bank, N.A.*, No. 14-CV-1936 (ER), 2015 WL 1433320 (S.D.N.Y. Mar. 30, 2015) ................................................... 2

*Screen Actors Guild - American Federation of Television and Radio Artists, New York Local v. New York Public Radio*, 21-cv-4972 (CM) ............................. 12

*Severin v. Project OHR, Inc.*, No. 10-cv-9696 (DLC) 2011 U.S. Dist. LEXIS 99839 (S.D.N.Y. Sept. 1, 2011) ....................................................................... 12

*Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043 (2d Cir. 1991)............................ 1, 4

*Spehar v. Fuchs*, 02-cv-9352 (CM), 2003 U.S. Dist. LEXIS 10406 (S.D.N.Y. June 17, 2003) .. 17

*Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140 (2d Cir. 2014)................................ 15

*United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298 (2d Cir. 1994) ..................................... 2

*Vera v. Saks & Co.*, 335 F.3d 109 (2d Cir. 2003)................................................. 4, 5, 6, 11

*Whitaker v. American Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001)...................... 3, 4

*Williams v. Buffalo Pub. Sch.*, 758 F. App'x 59 (2d Cir. 2018) ............................. 9

**Statutes**

28 U.S.C. § 1446(b) ............................................................................................. 1, 2, 5

28 U.S.C. § 1367 (c)(2)......................................................................................... 20

Labor Management Relations Act , 29 U.S.C. § 185 ............................................................ passim

New York Labor Law § 190 ...................................................................................................... 4

**Rules**

C.P.L.R. § 3012(b) ...................................................................................................................... 1

Fed. R. Civ. P. 15(a) ............................................................................................................... 1, 7

## PRELIMINARY STATEMENT

More than three weeks after the 30-day statutory period ended, Defendants New York Public Radio ("NYPR"), WNYC, and Audrey Cooper removed to this Court the action captioned *Fred Mogul v. New York Public Radio, WNYC, and Audrey Cooper,* Case No. 652968/2021 from the New York Supreme Court for the County of New York where it was filed (the "State Court Action"). Defendants' removal runs afoul of 28 U.S.C. § 1446(b)'s timeliness requirements, which are "rigorously enforce[d]." *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1046 (2d Cir. 1991). But even if the removal had been timely filed, the Court would lack subject matter jurisdiction over Plaintiff's Complaint, which alleges exclusively state law claims not arising under federal law, none of which is preempted by federal law. Because Defendants failed to comply with 28 U.S.C. § 1446(b), and because the Complaint raises only state law claims, the case should be remanded back to New York State Supreme Court. In the alternative, Plaintiff seeks an opportunity to amend his Complaint pursuant to Fed. R. Civ. P. 15(a).

## STATEMENT OF FACTS

On May 5, 2021, Plaintiff Fred Mogul commenced an action in the Supreme Court, New York County, Index No. 652968/2021, by filing a Summons with Notice pursuant to C.P.L.R. § 3012(b), alleging claims arising from the termination of his employment at WNYC against Defendants New York Public Radio ("NYPR"), WNYC, and Audrey Cooper (the "State Court Action"), including defamation, wrongful termination, violation of New York Labor Law, breach of contract and implied covenant of good faith and fair dealing, and intentional infliction of emotional distress ("IIED"). (*See* Rollings Decl. at Ex. 1.) On May 12, 2021, after discussion with Defendants' counsel regarding service of the Summons with Notice by mail pursuant to CPLR § 312-a, Plaintiff sent the 312-a Statement of Service by Mail and Acknowledgement of Receipt,

together with the Summons with Notice, Notice of Electronic Filing and Confirmation Notice by email to Defendants' counsel. (*See* Rollings Decl. at Ex. 2.) The next day, Plaintiff served a copy of the Summons with Notice and other documents on Defendants by mail. (*See* Rollings Decl. at Ex. 3.) On June 8, 2021, Defendants acknowledged service of the Summons with Notice, and the next day, on June 9, 2021, Defendants appeared in the State Court Action and filed a demand for the Complaint. (*See* Rollings Decl. at Ex. 4 and Ex. 5.) Plaintiff filed the Complaint in the State Court Action on June 15, 2021. (*See* Rollings Decl. at Ex. 6.) On July 8, 2021, Defendants filed a Notice of Removal, removing the case from the Supreme Court of New York, New York County, to the Southern District of New York, asserting that Plaintiff's claims are preempted by Section 301 of the Labor Management Relations Act (LMRA) and therefore considered federal claims arising under federal law for jurisdictional purposes.

## ARGUMENT

### I. Defendants Failed to Timely Remove Pursuant to 28 U.S.C. § 1446(b)

"In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (citation omitted). When removal is challenged, the removing party "has the burden of establishing that removal is proper." *United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). "Such an approach is warranted because removal abridges the deference courts generally give to a plaintiff's choice of forum." *Ritchie Capital Mgmt., L.L.C. v. BMO Harris Bank, N.A.*, No. 14-CV-1936 (ER), 2015 WL 1433320, at *3 (S.D.N.Y. Mar. 30, 2015) (quotations and citations omitted). Accordingly, the removing party must demonstrate "compliance with the

statutory requirements." *Commonwealth Advisors Inc. v. Wells Fargo Bank, Nat'l Ass'n*, No. 15-CV-7834 (JMF), 2016 WL 3542462, at *2 (S.D.N.Y. June 23, 2016) (quoting *Codapro Corp. v. Wilson*, 997 F. Supp. 322, 324–25 (E.D.N.Y. 1998)). "There is nothing in the removal statute that suggests that a district court has discretion to overlook or excuse prescribed procedures." *Id.; see also L.Y.E. Diamonds Ltd. v. Gemological Inst. of Am. Inc.*, No. 16-CV-3766 (VSB), 2017 WL 1207839, at *3 (S.D.N.Y. Mar. 31, 2017). Indeed, "[c]ourts police compliance with the rules governing removal with particular care to control the federal docket and to respect the independence of state courts." *Pezzo v. Air & Liquid Sys. Corp.*, No. 20-CV-10433 (JPO), 2021 U.S. Dist. LEXIS 127502, at *6 (S.D.N.Y. July 8, 2021).

28 U.S.C. § 1446(b)(1) requires defendants desiring to remove a civil action from a state court to file their notice of removal "within 30 days after the receipt . . . through service *or otherwise*, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" (emphasis added). It is well established in the Second Circuit that, for purposes of the federal removal statute, a summons with notice filed in accordance with New York State law "may constitute an initial pleading" because the summons must "provide notice stating the nature of the action and the relief sought—that is, information from which a defendant can ascertain removability." *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001).

Defendants received the Summons with Notice on May 12, 2021. (*See* Rollings Decl. Exs. 2, 3.) The Summons with Notice put Defendants on notice of the claims alleged in the Complaint, each of which—defamation, wrongful termination, denial of severance pay and benefits in violation of New York Labor Law § 190, breach of the implied covenant of good faith and fair dealing, and IIED—Defendants now argue is preempted by the Labor Management Relations Act ("LMRA"). As such, Defendants were required to move for removal no later than June 11, 2021,

30 days after receipt of the Summons with Notice. *See Whitaker* 261 F.3d at 206 (the 30-day removal period begins when a defendant "apply[ing] a reasonable amount of intelligence" may ascertain the basis for removal from the case materials). Whether or not Defendants were technically "served" with the Summons with Notice on May 12 is not the standard. The language of the statute is clear that the time for removal begins when the initial pleading—here, the Summons with Notice—is received "through service or otherwise." 28 U.S.C. § 1446(b)(1). The Court should remand this action because Defendants failed timely to remove it to this Court. *See Somlyo*, 932 F.2d at 1046.

## II. The Court Lacks Subject Matter Jurisdiction

Even if Defendants had complied with the removal statute's timeliness requirements, the Court would need to remand the case, because it lacks subject matter jurisdiction. The "federal removal statute allows a defendant to remove an action to the United States District Court in 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010) (quoting 28 U.S.C. § 1441(a)). But the removal statute is construed "narrowly," "[g]iven 'the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving state governments." *Arroyo v. NYU Langone Hosp.*, 19-cv-1624 (KPF), 2019 U.S. Dist. LEXIS 189531, at *4-5 (S.D.N.Y. Oct. 31, 2019) (citation omitted).

Defendants premise removal on their claim that Plaintiff's claims are preempted by Section 301 of the LMRA arguing that that "under the 'complete preemption' doctrine, these claims are considered federal claims that arise under federal law for jurisdictional purposes." (Notice of Removal, Dkt. No. 1, ¶ 10.) Defendants cite *Vera v. Saks & Co.*, 335 F.3d 109, 113 (2d Cir. 2003)

for the "complete pre-emption corollary to the well-pleaded complaint rule," providing "that any claim based on preempted state law is considered a federal claim arising under federal law" and that the "unusual pre-emptive power accorded section 301 extends to create federal jurisdiction even when the plaintiff's complaint makes no reference to federal law and appears to plead an adequate state law claim."

The complaint in *Vera*, a putative class action, challenged the legality of a term of a collective bargaining agreement (CBA) under New York State law, and did not, so far as the court described the claims, contain separate stand-alone claims. 335 F.3d at 114. Yet Defendants misleadingly cite *Vera* for the broad principles set forth in their Removal Notice at ¶ 10 without regard for the very different factual context and claims asserted in this case.

Plaintiff's Complaint in this case is premised on a claim of defamation as the First Cause of Action, with the Second and Fifth Causes of Action alleging claims for wrongful termination as a result of the defamation and IIED as a result of the wrongful termination. The Third Cause of Action pleads a violation of the New York Labor Law relating to denial of severance and the Fourth Cause of Action pleads breach of the implied covenant of good faith and fair dealing. Plaintiff's straightforward state law claims for defamation, wrongful termination and IIED do not refer at all to the CBA. Four of Plaintiff's five claims stand on their own, separately and apart from the CBA. Plaintiff's Complaint as a whole makes minimal reference to the CBA. And, most significantly, none of Plaintiff's claims requires interpretation or analysis of the CBA. *See* discussion *infra.*

Defendants' argument has been considered and rejected by this Court in other cases. For example, in *Najmiev v. Special Touch Home Care Servs.*, the Defendant similarly argued preemption based on *Vera*. The Court found "Defendant ignores that as the 'master of the

complaint,' a plaintiff may choose to bring state-law claims rather than ones based on federal law." No. 17-CV-01386 (VEC), 2017 U.S. Dist. LEXIS 108634, at *6-7 (S.D.N.Y. July 12, 2017).

If Plaintiff's Complaint pled only the First, Second, Fourth and Fifth Causes of Action and contained no reference to the CBA and asserted no affirmative claim for severance pursuant to the New York Labor Law or the advance notice provision referred to in the Fourth Cause of Action for breach of the implied covenant of good faith, there would be no serious question that removal would be improper. If the Court is inclined to uphold removal, Plaintiff requests an opportunity to amend the Complaint prior to the Court's retention of jurisdiction.

At this stage of the litigation, plaintiff has the right to amend the Complaint under both Fed. R. Civ. P. 15(a) and the New York CPLR. "A district court *must* remand a case to state court '[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction.'" *Vera v. Saks & Co.*, 335 F.3d 109, 113 (2d Cir. 2003) (emphasis added).

## III. None of Plaintiff's Claims is Preempted by the LMRA

A state law claim is preempted by the LMRA when: (a) it alleges a violation of a labor contract, or (b) "when resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," citing *Vera,* 335 F.3d 109, 114 (2d Cir. 2003), Defendants claim that each of Plaintiff's claims is preempted because they are all "substantially dependent upon analysis of the CBA." (Removal Notice, Dkt. No. 1, ¶ 10.)

Though § 301 of the LMRA may preempt state law claims that are "substantially dependent upon analysis" of a collective bargaining agreement, "[n]ot every suit concerning employment or tangentially involving a CBA . . . is preempted." *Vera*, 355 F.3d at 114. Here, Plaintiff does not plead a claim for breach of the CBA. None of Plaintiff's claims is substantially dependent upon

analysis of the CBA, and all of Plaintiff's claims can be adjudicated without analysis of the CBA. "Even if resolving a dispute under a state law claim and the [CBA] 'would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes.'" *Arroyo*, 2019 U.S. Dist. LEXIS 189531, at *7. Nothing in the Circuit's holding in *Vera* is to the contrary.

This case is more in line with the facts of another Second Circuit case, *Wynn v. AC Rochester*, 273 F.3d 153, 155 (2d Cir. 2001). In *Wynn*, plaintiff pled claims for fraud and misrepresentation, which are state law torts like defamation, wrongful termination and IIED. Because the claims turned not on interpretation of the CBA but rather "upon the employer's behavior, motivation, and statements, as well as plaintiffs' conduct," the court held that the claims were not preempted by § 301. *Id.* (quoting *Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 235 (2d Cir. 1997)). Here as well, Plaintiff's claims will turn on Defendants' conduct and statements, not on the terms of the CBA.

"The touchstone question for preemption, then, is whether 'resolution of a state-law claim is substantially dependent on analysis of the terms of an agreement made between the parties in a labor contract.'" *Berger v. N.Y. Univ.*, No. 19-CV-267 (JPO), 2019 U.S. Dist. LEXIS 129691, at *5 (S.D.N.Y. Aug. 2, 2019) (citation omitted). "[I]f 'the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation' provides no basis for LMRA preemption." *Id.* (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)).

The through-line of the Complaint is Plaintiff's claim that Defendants defamed him by falsely and publicly accusing him of plagiarism. (*See* Rollings Decl. at Ex. 6.) Defendants then

relied on this false charge as a pretext to further harm Plaintiff by wrongfully terminating him. As noted, Plaintiff's Complaint does not allege a breach of contract claim based on the CBA. Rather, the Complaint's references to the CBA are to the provisions entitling Plaintiff to advance notice of termination and severance pay in an amount equal to two weeks' pay for each year of employment as an employee terminated without cause. (*See* Rollings Decl. at Ex. 6.) These two factual allegations are not in dispute, and are not pertinent to Plaintiff's common law tort claims of defamation and IIED or necessary to plead or prove his wrongful termination or breach of implied covenant of good faith claim. *See Medina v. Waste Connections of N.Y.*, No. 19-CV-291 (RA), 2019 U.S. Dist. LEXIS 187842, at *8 (S.D.N.Y. Oct. 29, 2019) (claims not preempted where "neither party contests the meaning of any term in the CBA that would demand judicial interpretation."). In any event, a fact-finder resolving Plaintiff's state law claims would have no need to "analyze" or "interpret" the terms of the CBA to make a determination on any of Plaintiff's claims, and only to "consult" it in connection with the Third and Fourth Causes of Action. *See Arroyo*, 2019 U.S. Dist. LEXIS 129691, at *5.

To the extent that Defendants suggest that all of "Plaintiff's claims are preempted by Section 301 of the Labor Management Relations Act (LMRA) . . . under the 'complete preemption' doctrine" and that "those claims are considered federal claims that arise under federal law for jurisdictional purposes", not only is that statement not supported by *Vera v. Saks & Co.* but, in addition, on its face it plainly does not apply to Plaintiff's defamation and other state law tort claims.

### 1. Defamation (First Cause of Action)

A quick reading of the Complaint makes clear that Plaintiff's defamation claim predominates. The factual allegations underlying this claim are set forth in paragraphs 1 through

111 with no mention of the CBA. The CBA is not mentioned until paragraphs 121 through125. The defamation cause of action extending from paragraphs 134 through169 makes no mention of or reference to the CBA. The legal basis of the claim is that Defendants falsely and publicly accused Plaintiff of plagiarism and deceit. The determination of this claim is in no way associated with the CBA, and requires no consultation of the CBA, much less analysis or interpretation.

Plaintiff's defamation claim arises under New York law. The elements of a defamation claim under New York law are "(1) a false statement that is (2) negligently, at minimum, (3) published to a third party (4) without privilege or authorization, and that (5) causes harm, unless the statement is per se defamatory." *Williams v. Buffalo Pub. Sch.*, 758 F. App'x 59, 64-65 (2d Cir. 2018) (citing *Dillon v. City of New York*, 261 A.D. 2d 34, 38, 704 N.Y.S.2d 1 (1st Dep't 1999)). The Court need not refer to the CBA to adjudicate any of these elements.

The one case Defendants cite in support of the position that a defamation claim can be preempted by § 301—*Panczykowski v. Laborers' Int'l Union of N. Am.*, 2 F. App'x 157, 161 (2d Cir. 2001)—is inapposite. In that case, plaintiffs, former members or officials of the Buffalo area local chapter of the Laborers' International Union of North America, alleged that defendants had defamed them by claiming, in a complaint for trusteeship, disciplinary charges, and related notices, that they had mob connections. The CBA's Ethics and Disciplinary Procedure ("EDP") and resulting Ethical Practices Code ("EPC") prohibited union members from engaging in "barred conduct," defined to include "knowingly associating with any member or associate of the organized crime syndicate known as La Cosa Nostra." *Id.* at 159. The EDP also defined "knowingly associate." The court found that falsity of the alleged defamatory statement in that case was dependent on interpretation of the terms "barred conduct," as used in the EDP and EPC. *Id.* at 161.

Here, in contrast, nothing in the CBA has any relevance or bearing on the falsity of Defendants' plagiarism charge. *See, e.g., Bill v. Casarona*, 95 Civ. 2857 (PKL), 1996 U.S. Dist. LEXIS 9660, at *13 (S.D.N.Y. July 10, 1996) (New York defamation claim not preempted by LMRA); *Lawton v. UPS*, 338 F. Supp. 2d 347, 350 (D. Conn. 2004) (distinguishing *Panczykowski*). *See also Wynn*, 273 F.3d at 159 ("State law -- not the CBA -- is the source of the rights asserted by plaintiff[].") (citation omitted). This is a quintessential state law claim, filed and appropriately litigated in state court. For the same reason, this claim is not suitable or appropriate for this Court's supplemental jurisdiction. *See infra.* Plaintiff's choice of forum should be honored.

### 2. Wrongful Termination (Second Cause of Action)

Plaintiff's wrongful termination claim—which alleges that Defendants terminated his 18-year employment based on false and pretextual claims that he committed plagiarism—does not arise under the CBA or assert an affirmative claim under the CBA, much less "substantially depend[]" upon it. *Contra* Notice of Removal, Dkt. No. 1, ¶ 12. *See Arroyo,* 2019 U.S. Dist. LEXIS 189531, at *7 ("Plaintiff did not so much as mention the CBAs in his Complaint, let alone allege that Defendant had violated any term of the CBAs.") (remanding case). Plaintiff does not allege that his *employment* was terminated in violation of the CBA, and the claim does not turn on an interpretation of the CBA. In addition, the Complaint alleges that Defendants violated a wholly different set of agreements – "NYPR standards and policies of confidentiality", "NYPR's own journalistic standards and professional ethics" and "NYPR contracts [and] covenants, handbooks." Complaint ¶¶ 175–78. Because Plaintiff's wrongful termination claim does not rely upon the CBA, or refer to it except as a source of his entitlement to notice and severance, there is no basis for preemption.

### 3. Violation of New York Labor Law (Third Cause of Action)

Plaintiff's New York Labor Law ("NYLL") claim is the one claim in the Complaint relying directly on a provision in the CBA. Yet we submit that even this claim is not preempted by the LMRA. In general, "[i]t is 'well settled' that claims pursuant to N.Y. Labor Law are 'truly independent of rights under the CBA.'" *Gyecsek v. J.P. Hogan Coring & Sawing, Corp.*, No. 18 Civ. 1023 (PAC), 2019 U.S. Dist. LEXIS 36074, at *8–9 (S.D.N.Y. Mar. 6, 2019) (quoting *Kaye v. Orange Reg'l Med. Ctr.*, 975 F. Supp. 2d 412, 422 (S.D.N.Y. 2013)). Though the claim refers to the CBA provision setting forth reporters' severance entitlement—the existence of which is not in dispute—the claim is independent of the CBA. "A claim is not preempted merely because it requires a court to reference a straightforward and unambiguous provision of the CBAs to determine the proper rates-of-pay," in this case the amount of severance pay owed to WNYC reporters like Plaintiff. *See Arroyo*, 2019 U.S. Dist. LEXIS 189531, at *15. *See also Vera*, 335 F.3d at 115 ("Nor would a state claim be preempted if its application required mere referral to the CBA for 'information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.'") (citation omitted); *Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 332 (S.D.N.Y. 2012) ("The bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.") (citation and internal quotation marks omitted).

The cases that Defendants cite on this point are distinguishable because each of them required substantial interpretation of a CBA. For example, in *Cortese v. Skanska Koch, Inc.*, No. 20-cv-1632 (LJL), 2021 U.S. Dist. LEXIS 24152, at *16 (S.D.N.Y. Feb. 8, 2021), the court considered plaintiffs' claims under NYLL that defendants violated a construction agreement negotiated by their unions by paying them at a rate inconsistent with their CBAs. The court noted

that plaintiffs' NYLL claims turned on their ability to enforce a term of a CBA and would have required interpretation of the relevant agreements. *Id.* at *18. By contrast, Plaintiff here does not assert a claim for breach of the CBA. As the Court is aware, that claim is the subject of a separate lawsuit brought by Plaintiff's union, Screen Actors Guild – American Federation of Television and Radio Artists ("SAG-AFTRA"). *See Screen Actors Guild - American Federation of Television and Radio Artists, New York Local v. New York Public Radio*, 21-cv-4972 (CM). Instead, Plaintiff's NYLL claim refers to the CBA for purposes of noting that it entitles employees not terminated for cause to severance pay, a matter not in dispute. *Ellis v. Harpercollins Publrs., Inc.*, 99-cv-12123 (DLC), 2000 U.S. Dist. LEXIS 8598, at *5 (S.D.N.Y. June 21, 2000) is distinguishable in that it involved a Labor Law § 215 retaliation claim requiring an underlying violation of the Labor Law. Plaintiff here is not claiming a pure violation of the CBA; that claim is being pursued separately by his union. In addition, here Plaintiff alleges that Defendants' false claim of plagiarism was a pretext for not paying him severance, which has nothing to do with the CBA. *See Severin v. Project OHR, Inc.*, No. 10-cv-9696 (DLC) 2011 U.S. Dist. LEXIS 99839, *13 n.6 (S.D.N.Y. Sept. 1, 2011) (distinguishing *Ellis* and *Vera* and noting that plaintiffs' claims in each case "hinged on an interpretation of a collective bargaining agreement.").

To the extent that Defendants argue that analysis of this claim requires interpretation of the justification they provided for Plaintiff's termination, *i.e.* whether he was terminated "for cause," such analysis does not amount to or require an interpretation of the CBA. Just because a court may need to assess the reason Defendants "advance for [the plaintiff's] termination" does not mean that his claim is preempted. *Medina* 2019 U.S. Dist. LEXIS 187842, at *10. *See also Bryant v. Verizon Communs., Inc.*, 550 F. Supp. 2d 513, 527 (S.D.N.Y. 2008) (where "plaintiff's claims turned mainly on the behavior and motivation of the employer, and not on interpretation of the meaning

of the parties' labor agreement, the court held plaintiff's claims were not preempted by LMRA).

In any case, an argument that the termination was properly "for cause" within the meaning of the

CBA is a defense – not a claim alleged in the Complaint. As such, it is insufficient to render the

Complaint justiciable by this Court. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398-99 (1987)

("[A] case may not be removed to federal court on the basis of a federal defense, including the

defense of pre-emption[.]").

Plaintiff asserted a claim for denial of severance pay pursuant to the New York Labor Law

as a result of Defendants' assertion that denial of severance pay was not arbitrable under the CBA.

*See* Compl. ¶ 184. Plaintiff's union has filed suit on the severance claim. In Count I of its amended

complaint, the union alleges that "the dispute between the parties over the severance payments due

to Mogul following his termination without cause arises under the CBA and is subject to resolution

under the grievance and arbitration process under the CBA," and in Count II, the union asserts a

claim for severance under LMRA 301. *See* 21-cv-04972-CM, Dkt. No. 15. If the Court rules

against the union, finding no right to arbitration or statutory relief, Plaintiff's Labor Law claim

may provide the only route for him to obtain severance pay he is owed.

We note that in Exhibit A to Defendants' Related Case Statement, Defendants refer to the

federal action filed by Plaintiff's union and argue that Plaintiff's case and the union's case "arise

out of identical disputes and involve conflicting requests for relief. . . . Mogul and his union assert

mutually inconsistent theories in their complaints." *See* Dkt. No. 3. Defendants further state: "In

the [Union's] earlier filed case, SAG-AFTRA alleges that Mogul's termination and denial of

severance pay are subject to the CBA's grievance and arbitration procedure, and SAG-AFTRA

seeks to compel arbitration. *In Mogul's later-filed case, he specifically asserts that the same

claims are not subject to the CBA's grievance and arbitration procedure.* Thus, the cases . . .

demand contradictory relief arising out of the same dispute." (emphasis added). Defendants misstate the allegation in Plaintiff's Complaint. Plaintiff does not assert "that the same claims are not subject to the CBA's grievance and arbitration procedure." Rather, paragraph 184 of the Complaint alleges: "*Defendant NYPR asserts* that Plaintiff's claim for severance pay and benefits is not subject to the grievance or arbitration process under the CBA." (emphasis added). While the union's case and Plaintiff's Labor Law claim both involve NYPR's non-payment of severance, there are no "inconsistent theories," only different legal claims, and the requests for relief can be viewed in the alternative.

In any event, in recognition of the fact that Plaintiff's Labor Law claim does have some nexus to the severance provision of the CBA, Plaintiff requests, as noted above, an opportunity to amend the Complaint to eliminate this cause of action as alternative relief on this motion. *See* discussion *infra.*

### 4. Breach of Implied Covenant of Good Faith and Fair Dealing (Fourth Cause of Action)

Though Plaintiff's Breach of the Implied Covenant of Good Faith and Fair Dealing claim makes mention of the CBA, it *also* relies upon the WNYC Standards of Employee Conduct and states a claim for relief independent of the CBA. *See* Compl. ¶¶ 186–97. Critically, and contrary to Defendants' argument, the claims that Defendants breached the WNYC Standards of Employee Conduct could not have been "pleaded as a contract claim under § 301," (Notice of Removal, Dkt. No. 1, ¶ 14), because they do not concern the CBA. And because Plaintiff's implied covenant claim can be resolved without interpreting the CBA, it is "independent" of the CBA and cannot be preempted by the LMRA. *See Arroyo*, 2019 U.S. Dist. LEXIS 189531, at * 7.

### 5. Intentional Infliction of Emotional Distress (Fifth Cause of Action)

Plaintiff's IIED claim alleges that Defendants' defamatory statements damaged Plaintiff's

14

name and reputation, and caused him additional damage, including pain and suffering and emotional distress. Compl. ¶¶ 198-207. It contains no reference to the CBA. It is another quintessential state law claim. To prevail on an IIED claim under New York law, a plaintiff must establish that there was "'extreme and outrageous conduct,' that the conduct was undertaken with 'intent to cause, or disregard of a substantial probability of causing, severe emotional distress,' and that the conduct did in fact cause severe emotional distress." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157–58 (2d Cir. 2014) (citing *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702, 596 N.Y.S.2d 350 (1993)). Like the defamation claim, the IIED claim is entirely independent of the CBA, and none of the elements require the Court to consult the CBA.

Unlike the IIED claim in *Adonna v. Sargent Mfg. Co.*, 485 F. App'x 445, 447 (2d Cir. 2012), Plaintiff's claim does not require "interpretation of . . . CBA provisions" to determine that Defendants' conduct was "extreme and outrageous." *Id.* Similarly, in *Buttigieg v. 40 W. 67th St. Corp.*, No. 17-cv-620 (GBD), 2017 U.S. Dist. LEXIS 223143, at *3 (S.D.N.Y. Apr. 24, 2017), the court found it had to interpret the CBA—which controlled plaintiff's job assignments—to assess whether his allegations that he was required to "perform his job duties under conditions which rendered such activity unsafe and dangerous" amounted to "extreme and outrageous" conduct. In *Cruz v. United Auto. Workers Union Local 2300*, No. 3:18-CV-0048 (GTS/ML), 2019 U.S. Dist. LEXIS 119662, at *67 (N.D.N.Y. July 18, 2019), too, the plaintiff alleged that the "extreme and outrageous" conduct was based on termination and discipline processes outlined in the CBA.

In this case, the "extreme and outrageous" conduct has nothing to do with the CBA. Rather it has to do with Defendants' defamatory charge of plagiarism. "Plagiarism" is not defined by or referred to in the CBA, and the CBA is of no use to the Court in assessing Defendants' conduct. Rather, entirely separate and apart from the CBA, as alleged in the Complaint, plagiarism is

considered to be "the worst transgression a journalist can commit." Compl. ¶ 111. To publicly accuse Plaintiff, a well-respected 18-year veteran WNYC reporter, of plagiarism was and is, on its own, "extreme and outrageous" and was intended to and did harm his career and reputation. *Id.* ¶¶ 202-205. The CBA is wholly irrelevant to Plaintiff's IIED claim.

## IV.    Supplemental Jurisdiction

Defendants downplay Plaintiff's defamation and IIED claims, referring to them in the Notice of Removal as "Remaining Claims," presumably because it is clear that they do not meet the requisite standard for removal, undermining Defendants' argument that all of Plaintiff's claims are preempted.  (Notice of Removal, Dkt. No. 1, ¶ 15.)  Nonetheless, Defendants request that the Court exercise its supplemental jurisdiction to hear all of Plaintiff's claims.  We submit that there is no basis for federal jurisdiction over the State Court Action, in which the Complaint alleges only state law claims, none of which, we argue, is preempted by the LMRA.  But, even if the Court were inclined to find some of Plaintiff's claims preempted, Plaintiff's defamation claim "substantially predominates over" any claim over which the Court could have original jurisdiction, and will predominate the litigation of this case as it proceeds. Among other things, fact discovery on the defamation claim, both documentary and depositions, will be entirely different and substantially more extensive than discovery on Plaintiff's non-tort claims, as will expert and damages discovery and proof. *See* 28 U.S.C. § 1367 (c)(2) (circumstances where court may decline to exercise supplemental jurisdiction). *See, e.g.*, *Coakley v. Kingsbrook Jewish Med. Ctr.*, 2017 U.S. Dist. LEXIS 13060 (E.D.N.Y. Jan. 28, 2017) (declining to exercise supplemental jurisdiction where state law claim predominated); *Crowley v. First Step, Inc.*, No. 3:04 cv 01486 (MRK), 2004 U.S. Dist. LEXIS 24582, at *9 (D. Conn. Dec. 6, 2004).  *See also Moscovitch v. Danbury Hospital*, 25 F. Supp. 2d 74, 80 (D.Conn. 1998), cited by this Court in *Spehar v. Fuchs*, 02-cv-9352 (CM),

2003 U.S. Dist. LEXIS 10406, at *16, n.5 (S.D.N.Y. June 17, 2003) (In *Moscovitch*, "the defendant had removed plaintiff's original complaint, claiming that it was preempted by ERISA. Plaintiff filed an amended complaint and immediately moved to remand. The Honorable Christopher Droney granted the motion, noting that plaintiff had amended his complaint early in the litigation, and that the amended complaint was designed to remove any potential basis for federal jurisdiction. Judge Droney held that under these circumstances, it was appropriate to look at the amended complaint to determine whether the plaintiff's claims were preempted by ERISA. Judge Droney also found that plaintiff had not intended the original complaint to state federal claims.")

The Court should decline Defendants' request to extend its supplemental jurisdiction to Plaintiff's defamation-related tort claims.

## V. Amendment of the Complaint

If the Court were to find removal timely and to find any of Plaintiff's claims preempted by the LMRA, Plaintiff has the right to amend the Complaint under Fed. R. Civ. P. 15(a) and requests the opportunity to do so prior to the Court's deciding to retain jurisdiction of this action. As this Court stated in *Spehar v. Fuchs*, 02-cv-9352 (CM), 2003 U.S. Dist. LEXIS 10406, at *16 (S.D.N.Y. June 17, 2003); "when a post-removal amendment leaves a federal court with only state law claims, and where the federal court has had no substantive involvement in the case, the values of judicial economy, convenience, fairness, and comity weigh in favor of remanding to state court." The Court also referred to *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 619 (1988) ("In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state law claims.")

**CONCLUSION**

For the foregoing reasons, the Court should remand this case back to the New York State Supreme Court, or, in the alternative, provide Plaintiff an opportunity to amend the Complaint to remove any claim(s) found to raise a federal question and then remand this case back to the state court, and grant such other and further relief as may be just and proper.

Dated: New York, New York
      July 31, 2021

                                      Respectfully submitted,
                                        BELDOCK LEVINE & HOFFMAN LLP

                                  By: _____
                                        Cynthia Rollings
                                        Luna Droubi
                                        Rebecca Pattiz

                                        *Attorneys for Plaintiff*