# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

FRED MOGUL,

        Plaintiff,

    v.

NEW YORK PUBLIC RADIO; WNYC;
and AUDREY COOPER;

        Defendants.

No. 21-cv-05882-CM
[rel. 1:21-cv-04972-CM-RWL]

## DEFENDANTS' OPPOSITION TO
## PLAINTIFF FRED MOGUL'S MOTION TO REMAND

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ..................................................................................................... 1

BACKGROUND ....................................................................................................... 4

    A.   The Collective-Bargaining Agreement Between NYPR and SAG-AFTRA ............... 4

    B.   The CBA's Special Provisions for Hosts and Reporters ............................................. 5

    C.   NYPR Terminates Mogul After He Plagiarized an AP Story ..................................... 6

    D.   Procedural History ..................................................................................................... 8

ARGUMENT ............................................................................................................. 9

I.    THE COURT HAS JURISDICTION OVER MOGUL'S CLAIMS BECAUSE THEY ARE
    FEDERAL CLAIMS, COMPLETELY PREEMPTED BY SECTION 301 OF THE LMRA ................. 9

    A.   Mogul's Claim For Wrongful Termination Is Preempted Because The
        CBA Controls NYPR's Authority To Terminate Reporters ..................................... 11

    B.   Mogul's Claim Under New York Labor Law Is Preempted Because It
        Alleges A Violation Of The CBA's Terms Regarding Severance ........................... 13

    C.   Mogul's Claim For Breach Of The Covenant Of Good Faith And Fair
        Dealing Is Preempted Because It Relies On The CBA ............................................. 17

    D.   Mogul's Claim For Intentional Infliction Of Emotional Distress Is
        Preempted Because Interpretation Of The CBA Is Necessary To
        Determine Whether Defendants Engaged In Any "Wrongful" Conduct ................... 19

    E.   Mogul's Claim For Defamation Is Preempted Because The CBA
        Provides NYPR The Authority To Set Editorial Policies That Inform
        Whether Mogul, In Fact, Plagiarized ...................................................................... 21

II.   THE COURT SHOULD REJECT MOGUL'S ARGUMENTS REGARDING TIMELINESS,
    SUPPLEMENTAL JURISDICTION, AND PREMATURE AMENDMENT ......................................... 22

CONCLUSION ......................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*1357 Tarrytown Rd. Auto, LLC v. Granite Props., LLC*,
142 A.D.3d 976 (N.Y. App. Div. 2016) ...............................................................18

*Adonna v. Sargent Mfg. Co.*,
485 F. App'x 445 (2d Cir. 2012) ...........................................................2, 3, 19, 20

*Allam v. Meyers*,
No. 09-cv-10580, 2011 WL 721648 (S.D.N.Y. Feb. 24, 2011) ...........................20

*Allis-Chalmers Corp. v. Lueck*,
471 U.S. 202 (1985).................................................................................... *passim*

*Anderson v. Aset Corp.*,
416 F.3d 170 (2d Cir. 2005).................................................................................11

*Arroyo v. NYU Langone Hosp.*,
No. 19-cv-1624, 2019 WL 5682628 (S.D.N.Y. Oct. 31, 2019).............................15

*Brian v. Richardson*,
87 N.Y.2d 46 (1995) .......................................................................................3, 21

*Bryant v. Verizon Commc'ns, Inc.*,
550 F. Supp. 2d 513 (S.D.N.Y. 2008)..............................................................10, 11

*Buttigieg v. 40 W. 67th St. Corp.*,
No. 17-cv-620, 2017 WL 5515942 (S.D.N.Y. Apr. 24, 2017) .............................20

*Cartwright v. Golub Corp.*,
51 A.D.2d 407 (N.Y. App. Div. 1976) .................................................................11

*Cortese v. Skanska Koch, Inc.*,
No. 20-cv-1632, 2021 WL 429971 (S.D.N.Y. Feb. 8, 2021) ..........................13, 14

*Davila v. Gutierrez*,
330 F. Supp. 3d 925 (S.D.N.Y. 2018)................................................................22, 23

*De Petris v. Onion Settlement Ass'n*,
86 N.Y.2d 406 (1995) .....................................................................................11, 13

*Duran v. Jamaica Hosp.*,
216 F. Supp. 2d 63 (E.D.N.Y. 2002) .....................................................................2

*Ellis v. Harpercollins Publishers, Inc.*,
No. 99-cv-12123, 2000 WL 802900 (S.D.N.Y. June 21, 2000) ...........................14

*Fasciana v. Coia*,
No. 97-cv-0833A, 2000 WL 424200 (W.D.N.Y. Mar. 31, 2000) .........................21

*Guzman v. First Chinese Presbyterian Cmty. Affs. Home Attendant Corp.*,
No. 20-cv-3929, 2021 WL 632493 (S.D.N.Y. Feb. 18, 2021) ...............................4

ii

*Gyecsek v. J.P. Hogan Coring & Sawing, Corp.*,
No. 18-cv-1023, 2019 WL 1059998 (S.D.N.Y. Mar. 6, 2019) .........................................14, 15

*Holmes v. Air Line Pilots Ass'n, Int'l*,
745 F. Supp. 2d 176 (E.D.N.Y. 2010) ..................................................................................17

*Howell v. N.Y. Post Co.*,
81 N.Y.2d 115 (1993) .................................................................................................... 2, 19

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
62 F.3d 69 (2d Cir. 1995) ....................................................................................................4

*Johnson v. D.M. Rothman Co.*,
861 F. Supp. 2d 326 (S.D.N.Y. 2012) ..................................................................................15

*Jones v. Ford Motor Credit Co.*,
358 F.3d 205 (2d Cir. 2004) ................................................................................................23

*Kaye v. Orange Reg'l Med. Ctr.*,
975 F. Supp. 2d 412 (S.D.N.Y. 2013) ..................................................................................15

*Leonel Cruz v. United Auto. Workers Union Loc. 2300*,
No. 18-cv-0048, 2019 WL 3239843 (N.D.N.Y. July 18, 2019) ............................................19

*Medina v. Waste Connections of N.Y., Inc.*,
No. 19-cv-291, 2019 WL 5593307 (S.D.N.Y. Oct. 29, 2019) ..............................................15

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
526 U.S. 344 (1999) ...................................................................................................... 3, 22

*Panczykowski v. Laborers' Int'l Union of N. Am.*,
2 F. App'x 157 (2d Cir. 2001) ........................................................................................ 2, 21

*Romano v. Kazacos*,
609 F.3d 512 (2d Cir. 2010) ................................................................................................4

*Severin v. Project OHR, Inc.*,
No. 10-cv-9696, 2011 WL 3902994 (S.D.N.Y. Sept. 2, 2011) .............................................15

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
659 F.3d 234 (2d Cir. 2011) ................................................................................................23

*Sweeney v. Prisoners' Legal Servs. of N.Y., Inc.*,
146 A.D.2d 1 (N.Y. App. Div. 1989) ...................................................................................20

*Tand v. Solomon Schechter Day Sch. of Nassau Cnty.*,
324 F. Supp. 2d 379 (E.D.N.Y. 2004) ..................................................................................11

*Tierney v. Capricorn Invs., L.P.*,
189 A.D.2d 629 (N.Y. App. Div. 1993) ...............................................................................17

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Vera v. Saks & Co.,*
335 F.3d 109 (2d Cir. 2003)............................................................................. *passim*

*Whitehurst v. 1199 SEIU United Healthcare Workers E.,*
928 F.3d 201 (2d Cir. 2019).......................................................................1, 10, 15

*Wynn v. AC Rochester,*
273 F.3d 153 (2d Cir. 2001).......................................................................16

**STATUTES**

28 U.S.C. § 1367.......................................................................22, 23

28 U.S.C. § 1446.......................................................................22

29 U.S.C. § 185....................................................................... *passim*

N.Y. Lab. Law § 193.......................................................................13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 15.......................................................................24

**INTRODUCTION**

Defendant New York Public Radio ("NYPR"), a non-profit media organization, terminated one of its reporters, Plaintiff Fred Mogul, after he committed plagiarism. He lifted a paragraph from an AP story and, without quoting or attributing it to AP or the story's author, included it in his own draft, which he then submitted to his NYPR editor for publication. As Mogul himself alleges, plagiarism is "the worst transgression a journalist can commit." Compl. ¶ 130. And as he further acknowledges, NYPR polices made clear that plagiarism is an "unforgivable offense." *Id.* ¶ 117. Nevertheless, after he was terminated, Mogul filed a Complaint in New York state court against NYPR and its Editor-in-Chief, Audrey Cooper, asserting various causes of action arising out of his termination.[1]

Because Mogul's claims are "complete[ly] preempt[ed]" by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA"), *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003), Defendants removed Mogul's Complaint to federal court. The LMRA has "extraordinary" preemptive force; it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Whitehurst v. 1199 SEIU United Healthcare Workers E.*, 928 F.3d 201, 206 (2d Cir. 2019) (citation omitted). Thus, any claim that is preempted by § 301 of the LMRA (like Mogul's claims here) provides a basis for federal jurisdiction. *Id.*

Mogul now seeks to return to state court, but his Motion to Remand ("Mot.") is flawed from start to finish. As Mogul himself makes clear, he is a member of a union, and that union has a collective-bargaining agreement with NYPR. Compl. ¶ 121; Declaration of Wendy Butler, Ex.

---

[1] The Summons with Notice and Complaint name "WNYC" as a Defendant. WNYC is not a legal entity, and thus not a proper party to this action.

1 ("CBA"). Each of Mogul's claims "alleges a violation of a labor contract" or is "substantially dependent upon analysis of the terms of" a CBA, which means they are preempted. *Vera*, 335 F.3d at 114 (citation omitted). These preemption principles extend to claims for wrongful termination, *Duran v. Jamaica Hosp.*, 216 F. Supp. 2d 63, 70 (E.D.N.Y. 2002), violations of New York labor law, *Vera*, 335 F.3d 109, breach of the covenant of good faith, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 219–20 (1985), intentional infliction of emotional distress, *Adonna v. Sargent Mfg. Co.*, 485 F. App'x 445, 447–48 (2d Cir. 2012), and defamation, *Panczykowski v. Laborers' Int'l Union of N. Am.*, 2 F. App'x 157, 161 (2d Cir. 2001)—in other words, all of Mogul's claims.

Mogul's claims for wrongful termination, violation of New York labor law, and violation of the covenant of good faith and fair dealing, directly "allege[] a violation of a labor contract." *Vera*, 335 F.3d at 114. Mogul asserts that he was terminated without notice and without severance pay, and he candidly admits that his supposed "right" to notice or severance comes from the CBA. Compl. ¶¶ 122–25. Mogul tries to characterize these claims as nevertheless "independent" of the CBA, Motion to Remand, ECF Doc. 16 ("Mot.") at 10–14, but there can be no serious dispute that these claims are preempted. They directly refer to and rely on terms of the CBA, including whether Mogul was terminated "with" or "without" cause. CBA at 37, 40. These "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Allis-Chalmers*, 471 U.S. at 211.

Mogul's other claims fare no better. Under New York law, intentional infliction of emotional distress requires a plaintiff to prove "extreme and outrageous conduct." *Howell v. N.Y.*

*Post Co.*, 81 N.Y.2d 115, 121 (1993). Mogul alleges that Defendants' "termination of plaintiff's employment constitute[s] intentional and reckless tortious conduct," Compl. ¶ 199, but whether Mogul's termination was "in any way wrongful" depends on the CBA, so this claim is preempted as well, *Adonna*, 485 F. App'x at 447. Mogul also claims he was "defamed" because Defendants falsely accused him of plagiarism, Compl. ¶ 135, but under the CBA, NYPR has the right to decide what does or does not violate its absolute policy against plagiarism. So to determine whether anything that anyone said was "false"—necessary for a defamation claim, *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995)—again, the Court will have to interpret the CBA, meaning this claim, too, is preempted.

Mogul appears to recognize that he has little hope of a remand to state court, as he backfills his motion with a number of tangential (and at times bizarre) arguments. For instance, Mogul asserts that Defendants' removal notice was untimely because the deadline should not be calculated based on service of the initial pleading, but this is a frivolous contention, directly contradicted by controlling Supreme Court precedent. *Murphy Bros, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999). Next, Mogul asserts that the Court should remand the defamation claim to state court, even if the other claims are preempted, because it "predominates" over the other claims. Mot. at 16. But that makes no sense; a question critical to the defamation claim—whether Mogul plagiarized—is important to his other claims as well. There is no cause for separating them out, and doing so would be burdensome, inefficient, and potentially lead to conflicting judgments. Finally, Mogul asks, preemptively, to amend his Complaint if the Court holds that any of his claims are preempted. *Id.* at 17. This request is plainly premature and only goes to show that Mogul already knows his claims are preempted.

Mogul's Motion to Remand should be denied in its entirety.

**BACKGROUND**

Mogul's allegations must generally be accepted as true, but because his Complaint "relies heavily upon" the CBA between NYPR and Mogul's union, that CBA is "'integral' to the complaint, and [the court may] consider its terms." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). Likewise, "[o]n a motion to remand for lack of subject matter jurisdiction, courts assume the truth of non-jurisdictional facts alleged in the complaint, but may consider materials outside of the complaint, such as documents attached to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis." *Guzman v. First Chinese Presbyterian Cmty. Affs. Home Attendant Corp.*, No. 20-cv-3929, 2021 WL 632493, at *1 (S.D.N.Y. Feb. 18, 2021); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010) ("[I]f subject matter jurisdiction is contested, courts are permitted to look to materials outside the pleadings."). Accordingly, this background generally accepts Mogul's pleadings as true for the purposes of this Opposition, except where they conflict with the CBA or the documents he attached to his own Complaint.

### A. The Collective-Bargaining Agreement Between NYPR and SAG-AFTRA

NYPR is a non-profit media organization that operates a number of radio stations and websites in New York. Compl. ¶¶ 15–19. Many of NYPR's employees, including Fred Mogul, are represented by the Screen Actors Guild – American Federation of Television and Radio Artists, New York Local ("SAG-AFTRA" or "the Union"), a labor organization that collectively bargains with NYPR on behalf of its members. *Id.* ¶ 61; *see generally* CBA. The bargaining unit is comprised of various positions, including, for example, copywriters, hosts, production assistants, producers, and reporters. CBA at 5.

NYPR and the Union share a collective bargaining agreement that runs from July 1, 2018, to June 30, 2022. *Id.* at 4. As with any such agreement, the CBA covers numerous topics,

including, for instance, minimum compensation for employees, overtime, short-term disability benefits, disciplinary meetings, terminations, and severance. *Id.* at 9, 11–14, 25–26, 35–38.

### B. The CBA's Special Provisions for Hosts and Reporters

Although the CBA covers all bargaining unit employees to varying extents, some employee positions are treated differently for certain purposes. *See, e.g.*, *id.* at 29. As relevant here, the CBA treats reporters—and Mogul acknowledges he was a reporter, Compl. ¶¶ 10–13— differently in several important respects.

To start, the CBA is explicit that "[p]ersons occupying the job titles of Host, Reporter I, Reporter II and Senior Reporter may be terminated with or without cause." CBA at 40. The CBA does not limit NYPR's right to terminate reporters; likewise, it does not limit NYPR's discretion in determining the termination to be "with" or "without" cause. *Id.* Reporter terminations are also excluded from the CBA's "Article XXII, Disciplinary Meetings." *Id.* The CBA's provision for "Disciplinary Meetings" generally requires that "[a]ll efforts shall be made to notify the Union in advance of any termination." *Id.* at 35; Compl. ¶ 122. But reporters are explicitly excluded from these requirements. CBA at 40.

Reporters are also treated differently with respect to "Article XXIII, Layoffs/Severance." *Id.* Reporters are subject to only two sections within Article XXIII of the CBA, regarding notice pay and severance pay after termination. When NYPR terminates a "Host, Reporter II or Senior Reporter," "with or without cause," they are entitled to four weeks of notice or "pay in lieu thereof." Where a reporter is terminated "without cause," NYPR also must pay severance. *Id.* at 37. Reporters are not subject to the various restrictions and rules regarding layoffs that cover most bargaining unit employees. *Id.* at 35–37, 40.

## C.     NYPR Terminates Mogul After He Plagiarized an AP Story

Plaintiff Fred Mogul was a reporter employed by NYPR.  Compl. ¶¶ 10–13.  In January 2021, Mogul was assigned to report a story about the science behind canine COVID detection.  *Id.* ¶ 35.  Although inspired by an AP story about the Miami Heat's use of COVID-sniffing dogs, Mogul was supposed to prepare a local story about the relevant science, including a "Q&A" with a scientist.  *Id.*

Mogul submitted a draft of his story to his editor on January 27.  *Id.* ¶ 37.  In his draft, Mogul quoted a Miami Heat executive, relying on the AP article and attributing the quote to AP in the text of the draft.  *Id.* ¶ 39.  But Mogul also copied *another* paragraph, word for word, from a different part of the AP story, without using quotation marks or identifying the AP article as the original source of the paragraph.  *Id.* ¶ 40; *compare* Compl. Ex. C ("Mogul Draft") at 1 *with* Compl. Ex. F ("AP Story") at 2.  Mogul also changed a comma and omitted the first clause in the AP paragraph to make it fit within his story.  Compl. ¶ 80; *compare* Mogul Draft at 1 *with* AP Story at 2.

Mogul acknowledges that he did not include a byline in the submitted draft, much less a byline that credited AP or the AP Story's author.  Compl. ¶ 43. Mogul alleges that he included an "attribution" to AP at the end of his draft story, stating: "Reporting from Miami by the Associated Press."  *Id.* ¶ 41.  But as document itself makes clear, Mogul said nothing about authorship—only "[r]eporting," a distinct concept.  *See* Mogul Draft at 3.

Mogul's editor immediately flagged the problem.  He removed the plagiarized paragraph and told Mogul that "We shouldn't copy-paste text (outside of quotes) from AP stories."  Compl. ¶¶ 47–48.  Mogul responded that he thought it was "kosher" as long as AP was "bylined."  *Id.* ¶ 49.

With the offending language removed, Mogul's editor submitted the story for publication, and it appeared online, as corrected, on January 28. *Id.* ¶¶ 51, 58–60; Compl. Ex. E. Mogul's editor then informed an executive editor about Mogul's apparent belief that NYPR reporters could lift language from AP stories without quotation or attribution. Compl. ¶ 62. The executive editor, in turn, elevated the issue to Defendant Audrey Cooper, Editor-in-Chief of NYPR. *Id.* ¶ 63.

On February 4, Mogul "was contacted" and asked to meet with Human Resources the next day. *Id.* ¶ 61. Mogul was allowed to bring a Union representative to the meeting. *Id.* Also present at the meeting were Cooper, Mogul's editor, and an HR representative. *Id.* ¶ 68.

Cooper began the meeting by explaining that Mogul had "lifted" a paragraph from an AP story he had submitted for publication. *Id.* ¶ 69. She explained that this was not appropriate. *Id.* ¶¶ 70, 79. She pointed out that he did not merely lift the paragraph, he edited it to "fit the story." *Id.* ¶ 80. She informed Mogul that his actions violated the NYPR Editorial Policy and Guidelines, which provide that "[n]o material from another source should ever be included verbatim, or substantially so, without attribution." *Id.* ¶¶ 79, 117.

Mogul tried to justify his use of the AP story's language. For instance, Mogul alleges that he told Cooper he had placed AP in the byline, even though, as he acknowledges in his Complaint, he did not. *Id.* ¶¶ 43, 81. He asserted that he thought that he could use AP language if he "attributed" "appropriate credit" to AP at the "top or bottom" of the story. *Id.* ¶ 71. Alternatively, he thought it was allowable, since the paragraph above the lifted paragraph had attributed *its* quotation to the AP. *Id.* ¶ 73. He also claimed that other reporters similarly lifted language without quoting the source. *Id.* ¶¶ 76–77.

Cooper was not swayed by these rationalizations. At the end of the meeting, Cooper informed Mogul that he was terminated, effective immediately. *Id.* ¶ 89.

In the wake of Mogul's firing, Cooper held meetings with NYPR editors and newsroom staff, explaining the decision to terminate Mogul. *Id.* ¶¶ 91–94. Cooper informed the newsroom staff that she had terminated Mogul because of his plagiarism. *Id.* ¶ 97. She explained that he "signed his name on AP copy without having AP on the byline," in a "clear case of his taking credit for someone else's work." *Id.* ¶ 99. His "explanation strained credibility," and if the "font" had not been different, he would have "gotten away with it." *Id.*

### D.    Procedural History

On or about May 5, Mogul commenced an action against Defendants in New York Supreme Court, when he filed a Summons with Notice. *See* Mot. at 1. Defendants were served with Mogul's Summons with Notice on June 9, 2021, *see* Notice of Removal, ECF Doc. 1 ("Notice") ¶ 2 & Ex. B, when they returned to Mogul an Acknowledgement of Service under New York CPLR 312-a, which provides that "[s]ervice is complete on the date the signed acknowledgement of receipt is mailed or delivered to the sender."

Around the same time, June 4, in a related action, Mogul's Union filed a complaint against NYPR in this Court. *See* ECF Doc. 1, *Screen Actors Guild – Am. Fed'n of Television & Radio Artists, N.Y. Loc. v. N.Y. Pub. Radio*, No. 21-cv-04972 ("*Union Action*") (S.D.N.Y. June 4, 2021). The Union sought to compel arbitration of claims that Mogul was wrongfully terminated and owed severance under the CBA, or, in the alternative, directly litigate its claims under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). NYPR has moved to dismiss the Union's amended complaint because the CBA expressly provides that reporter terminations "shall not be subject to Article XXI, Grievance and Arbitration Procedure" and does not provide Mogul the right to severance pay. *See Union Action*, ECF Docs. 18, 19, (S.D.N.Y. July 27, 2021).

Meanwhile, on June 15, Mogul finally filed his Complaint in New York Supreme Court. Compl. at 1. Mogul's Complaint alleges five counts, each arising out of his plagiarism and

termination.  *First*, Mogul alleges that Defendants defamed him by stating that he plagiarized.  *Id.* ¶¶ 134–69.  *Second*, Mogul alleges that he was "[w]rongful[ly] [t]erminate[d]."  *Id.* ¶¶ 170–78.  *Third*, Mogul alleges that NYPR violated New York Labor Law §§ 190, et seq., because it declined to pay him severance he was supposedly due under the CBA.  Compl. ¶¶ 179–85.  *Fourth*, Mogul claims that, by failing to pay him severance, give him notice, and keep certain matters confidential, NYPR violated a covenant of good faith and fair duty, supposedly arising from the CBA and the "WNYC Standards of Employee Conduct."  *Id.* ¶¶ 186–97.  *Fifth*, Mogul claims that Defendants intentionally inflicted emotional distress by terminating him and accusing him of plagiarism.  *Id.* ¶¶ 198–207.

Because Mogul's claims are completely preempted by the LMRA, Defendants removed Mogul's Complaint to this Court.  Mogul now moves to remand his Complaint to state court.

## ARGUMENT

The Court should reject Mogul's Motion to Remand because each of his claims are "complete[ly] preempt[ed]" by the LMRA.  *Vera*, 335 F.3d at 116.  The Complaint is clear that several of Mogul's claims (counts 2, 3, 4) directly rely on supposed rights granted by the CBA.  But his emotional distress and defamation claims (counts 1, 5) are preempted, too, as they also require interpretation and analysis of the CBA.  At the very least, some of Mogul's claims are preempted, which means that jurisdiction (and therefore removal) is proper.  The Court should reject Mogul's remaining arguments regarding timeliness, supplemental jurisdiction, and amendment, which are premature, mistaken, or both.

**I.    THE COURT HAS JURISDICTION OVER MOGUL'S CLAIMS BECAUSE THEY ARE FEDERAL CLAIMS, COMPLETELY PREEMPTED BY SECTION 301 OF THE LMRA.**

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization … may be brought in any district court of the United States

having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). The Supreme Court "has interpreted section '301 as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts.'" *Vera*, 335 F.3d at 114 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985)). Accordingly, "when a state claim alleges a violation of a labor contract, the Supreme Court has held that such claim is preempted by section 301." *Id.* Moreover, the LMRA is one of the rare statutes with "pre-emptive force … so extraordinary" that it allows for removal of state law claims to federal court, notwithstanding the ordinary rule that preemption is an affirmative defense not allowing for removal. *Whitehurst*, 928 F.3d at 206 (citation omitted).

"Further, … the Supreme Court has extended the preemptive effect of section 301 beyond suits alleging contract violations." *Vera*, 335 F.3d at 114. A state law claim is preempted "'[w]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.'" *Id.* (quoting *Allis-Chalmers*, 471 U.S. at 220). "Federal law preempts such state claims to further the federal goal of developing a uniform federal common law to govern labor disputes, 'lest common terms in bargaining agreements be given different and potentially inconsistent interpretations in different jurisdictions.'" *Id.* (citation omitted). Thus, a state claim is preempted when it "alleges a violation of a labor contract" *or* "[w]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Id.* (citation omitted).

"[T]he starting point in determining whether a claim is preempted by Section 301 is consideration of the elements of plaintiff's stated claim." *Bryant v. Verizon Commc'ns, Inc.*, 550 F. Supp. 2d 513, 527 (S.D.N.Y. 2008) (citation omitted). "The court then considers whether

adjudication of any element of that claim requires interpretation of the parties' CBA." *Id.*; *see, e.g.*, *Anderson v. Aset Corp.*, 416 F.3d 170, 171 (2d Cir. 2005) (claim for tortious interference with contract preempted because it would require interpretation of the labor agreement).

Applying these principles, all of Mogul's claims are preempted. They involve disputes over things like "wages" and "wrongful discharge." *Tand v. Solomon Schechter Day Sch. of Nassau Cnty.*, 324 F. Supp. 2d 379, 382 (E.D.N.Y. 2004) (citation omitted). These claims are not only "substantially dependent upon analysis" of the CBA, they implicate the very core of the CBA's provisions. *Allis-Chalmers*, 471 U.S. at 220.

### A.   Mogul's Claim For Wrongful Termination Is Preempted Because The CBA Controls NYPR's Authority To Terminate Reporters.

In New York, "[i]t is well settled that, in the absence of a contract of employment for a specific term, the employment is terminable at will and the employer has the right to discharge." *Cartwright v. Golub Corp.*, 51 A.D.2d 407, 409 (N.Y. App. Div. 1976). Thus, to make out a claim for wrongful termination, Mogul must point to an "express written policy limiting [NYPR's] right of discharge" and his own detrimental reliance on that policy. *De Petris v. Onion Settlement Ass'n*, 86 N.Y.2d 406, 410 (1995). Indeed, New York has explained that when the elements of wrongful discharge are "proved, the employee in effect has a contract claim against the employer." *Id.*

The "contract" here is the CBA, as it is the only "express written policy" addressing Mogul's termination. That CBA provides NYPR the right to terminate reporters "with or without cause." CBA at 40. Thus, no claim for wrongful termination could possibly be adjudicated "without interpreting the [CBA] itself," Mot. at 7 (citation omitted), given that the CBA provides NYPR discretion to remove reporters "with or without cause," CBA at 40. This language should preclude any claim for wrongful termination, but in all events, it makes clear that any such claim

11

is preempted, because it is, in fact, "a state claim [that] alleges a violation of a labor contract," which is plainly preempted. *Vera*, 335 F.3d at 114.

Mogul even admits that he relies on the CBA "as a source of his entitlement to notice and severance." Mot. at 10. Though Mogul tries to ignore this reliance, Mogul could not possibly prove that he was wrongfully terminated without any entitlement to employment. Mogul thus alleges that the "CBA provides that 'all efforts shall be made to notify the Union in advance of any termination,'" and that "defendants did not provide plaintiff with advance notice of his termination." Compl. ¶¶ 122–23, 173. Mogul likewise asserts that he was entitled to severance under the CBA but denied it. *Id.* ¶¶ 175, 177. Mogul's claim is only understandable as a claim that NYPR terminated him in violation of the procedures and guarantees under the CBA.

Mogul is wrong about what he is entitled to under the CBA, but the important point is that it is the CBA that controls this question. The CBA controls reporter terminations. CBA at 40. The CBA controls what notice may be required for terminations, expressly excluding reporter terminations from Article XXII's requirement that "[a]ll efforts shall be made to notify the Union in advance of any termination." *Id.* at 35, 40. And the CBA controls when, if at all, reporters are entitled to severance upon their terminations, providing for severance only when a reporter is terminated "without cause." *Id.* at 37; *see infra* pp. 13–17. Given the CBA's plain language, Mogul's claim would fail; but either way, it necessarily depends on the CBA and requires interpretation of the CBA's terms

Mogul tries to distract the Court with vague and conclusory allegations that NYPR violated "NYPR contracts, covenants, handbooks, policies and practices" other than the CBA, Compl. ¶ 175; *see* Mot. at 10. Mogul does not even try to connect these indeterminate allegations to a claim for wrongful termination. Mogul does not allege that any of these (unidentified) policies is

an "express written policy limiting [NYPR's] right of discharge" nor does he allege his own

detrimental reliance on that policy. *De Petris*, 86 N.Y.2d at 410. And even if they were somehow

relevant, Mogul's claim is still preempted—whatever else may be relevant, it is patently clear that

his claim "substantially depend[s]" on the CBA's terms regarding reporter terminations, notice

and severance. *Vera*, 335 F.3d at 114 (citation omitted).[2]

**B.      Mogul's Claim Under New York Labor Law Is Preempted Because It Alleges A Violation Of The CBA's Terms Regarding Severance.**

Mogul all but admits that his claim under New York labor law is preempted, as it directly

relies on the CBA. New York prohibits employers from making "any deduction[s] from the wages

of an employee." N.Y. Lab. Law § 193. Mogul asserts that NYPR's decision to terminate him

without paying severance somehow violates this provision, but as he makes clear, any such

entitlement to severance comes from the "applicable CBA." Compl. ¶ 181. Mogul's claim *must*

come from the CBA because the relevant New York labor law "does not create a freestanding

statutory right independent of a pre-existing contractual right." *Cortese v. Skanska Koch, Inc.*, No.

20-cv-1632, 2021 WL 429971, at *16 (S.D.N.Y. Feb. 8, 2021). Since any ostensible claim to

severance "rests squarely on a right [supposedly] created by the CBA and would require

interpretation of the CBA upon which it depends," this claim, too, is plainly preempted. *Id*.

Mogul's attempts to sidestep the implications of his own allegations are risible. Mogul

first asserts that his claim is "independent" of the CBA. Mot. at 11. Nonsense. The only reason

that Mogul would have any entitlement to severance (and thus any potential claim for deducted

wages under New York labor law) is the CBA. Mogul does not even assert that some other source

---

[2] Mogul's argument that he "does not allege that his *employment* was terminated in violation of the CBA," Mot. at 10, is odd, to say the least. If Mogul's employment was not wrongfully terminated, he has no claim for wrongful termination. If it was, any such claim would necessarily be based on the CBA or at least require substantial analysis of its terms.

of law could provide him the predicate right to severance. "If the right exists solely as a result of the CBA, and not by virtue of state law, then the claim is preempted, and the analysis ends there." *Gyecsek v. J.P. Hogan Coring & Sawing, Corp.*, No. 18-cv-1023, 2019 WL 1059998, at *3 (S.D.N.Y. Mar. 6, 2019) (citation omitted).

Courts have held numerous claims preempted in nearly identical circumstances. For example, this Court held as much in *Cortese*, 2021 WL 429971, which Mogul tries to distinguish to no avail. There, as here, plaintiffs asserted a claim under New York labor law; there, as here, the only *basis* for that claim was an entitlement found in the CBA, not a separate entitlement independent of the CBA (like a statutory minimum wage). *Id.* at *16. The plaintiff in *Cortese* asserted that a "CBA entitled him to a higher irregular shift differential; that the shift differential was a wage within the meaning of the [New York Labor Law]; and that Defendants violated Section 191 of the [New York Labor Law] by failing to pay him the higher irregular shift differential for all irregular shift work performed by him." *Id.* at *15. That is exactly parallel to Mogul's severance allegations here, and the Court rightly held it preempted. *Id.* at *16. Similarly, in *Ellis v. Harpercollins Publishers, Inc.*, No. 99-cv-12123, 2000 WL 802900, at *1 (S.D.N.Y. June 21, 2000), the Court held preempted a claim "that HarperCollins's failure to pay [wages] in accordance with the terms of the CBA amounts to a violation of New York Labor Law." That is again identical to the situation here: Mogul claims that "[NYPR]'s failure to pay [severance] in accordance with the terms of the CBA amounts to a violation of New York Labor Law." *Id.*

None of Mogul's cited cases suggests anything to the contrary. In *Gyecsek*, for instance, the plaintiff's claim was that the employer failed to pay overtime. 2019 WL 1059998, at *1–2. Overtime pay is mandated by statute, not any applicable CBA—in other words, even if the CBA did not exist, plaintiff's claim would be the exact same. *Id.* at *4. The Court noted that the CBA

could be useful for determining the rate of pay necessary for *damages*, but there was no contention that the CBA was the basis for the right. *Id*. *Arroyo v. NYU Langone Hospital* is another case involving failure to pay overtime; again, "Plaintiff 'may prevail on [his] state[-]law claims regardless of whether the defendants [ ] paid [him] in the manner provided by the CBA." No. 19-cv-1624, 2019 WL 5682628, at *3 (S.D.N.Y. Oct. 31, 2019) (citation omitted); *see also Kaye v. Orange Reg'l Med. Ctr.*, 975 F. Supp. 2d 412, 422 (S.D.N.Y. 2013) (same); *Severin v. Project OHR, Inc.*, No. 10-cv-9696, 2011 WL 3902994, at *4 (S.D.N.Y. Sept. 2, 2011) (alleging "failure to pay employees the minimum wage" mandated by statute, not the CBA); *Medina v. Waste Connections of N.Y., Inc.*, No. 19-cv-291, 2019 WL 5593307, at *2 (S.D.N.Y. Oct. 29, 2019) ("The sole cause of action in the amended complaint alleges that Plaintiff was retaliated against in violation of the NYCHRL for reporting discriminatory conduct against him and other Hispanic employees."); *but see Johnson v. D.M. Rothman Co*., 861 F. Supp. 2d 326, 333 (S.D.N.Y. 2012) (holding claims preempted because they depended on the terms "Hi–Lo Operators" and "grandfather employees," as "used in the CBA").

Mogul next argues that there is no "dispute" over the CBA's "provision setting forth reporters' severance entitlement," Mot. at 11, but this is irrelevant and absurd. To start, a "dispute" over CBA language is not required for preemption. Section 301 of the LMRA assures that federal law "determine[s]" "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement." *Allis-Chalmers*, 471 U.S. at 211. Thus, "claims founded directly on rights created by collective-bargaining agreements," are always preempted. *Whitehurst*, 928 F.3d at 206 (citation omitted). Whether a provision of the CBA is "disputed" *might* be relevant where a provision is only indirectly related to the claim. That is because, where the only basis for preemption is that the claim will require

"analysis of the terms of an agreement," *Vera*, 335 F.3d at 114 (citation omitted), if the parties do not dispute the terms, there need be no analysis. For example, if a party alleges that an employer fraudulently misrepresented the terms of a CBA, but the underlying terms are not disputed, the question neither depends on the CBA nor requires interpretation of its terms. *See, e.g.*, *Wynn v. AC Rochester*, 273 F.3d 153, 159 (2d Cir. 2001). But Mogul's claim is explicitly based on NYPR's supposed violation of the severance provisions of the CBA, so federal law must determine the "consequences" of any alleged breach. *Allis-Chalmers*, 471 U.S. at 211.

Regardless, it is utterly disingenuous to suggest that there is no dispute—Mogul is well aware that the relevant CBA terms are hotly disputed. In fact, these very terms are *being disputed* in the related case, where Mogul's Union asserts a claim directly under § 301, arguing that NYPR owes Mogul severance under the CBA. *See Union Action*, ECF Doc. 15 (S.D.N.Y. July 13, 2021) (amended complaint). NYPR's position there and here is the same, and it is based on the CBA, which provides that only reporters terminated "*without* cause" are entitled to severance. CBA at 37 (emphasis added). Thus, Mogul must establish that he was terminated "without cause," *id.*— otherwise, he has no right to severance, and there is no violation of the CBA (and no predicate contractual right to support a New York labor law claim). At the same time, the CBA provides NYPR the *right* to terminate reporters "with or without cause." *Id.* at 40. Accordingly, NYPR has argued in the Union's action (and will here as well) that NYPR terminated Mogul with "cause" because, as a matter of law, NYPR has the discretion under the CBA to determine "cause," and in any event, Mogul's plagiarism constitutes "cause." *See Union Action*, ECF Docs. 10, 19 (S.D.N.Y. June 29 & July 27, 2021). Regardless, the meaning and effect of these CBA terms are certainly in dispute. Federal law preempts state claims precisely "to further the federal goal of developing a uniform federal common law to govern labor disputes, 'lest common terms in bargaining

agreements be given different and potentially inconsistent interpretations in different jurisdictions.'" *Vera*, 335 F.3d at 114 (citation omitted). A remand here would vitiate that "federal goal." *Id.*

Mogul frets that "[i]f the Court rules against the union" in the related case, his "Labor Law claim may provide the only route for him to obtain severance pay he is owed," but that is incoherent. Mot. at 13. If the Court rules against the Union, it will be because he *is not owed* severance under the CBA, so he needs no "route" to it. "Put another way, [a] plaintiff[] cannot substitute for an inadequate [federal] claim a state law claim arising out of the same facts and theories of obligation." *Holmes v. Air Line Pilots Ass'n, Int'l*, 745 F. Supp. 2d 176, 211 (E.D.N.Y. 2010). "Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims." *Allis-Chalmers*, 471 U.S. at 211.

Finally, Mogul's contention that the question of cause is somehow an affirmative "defense" is another unserious argument. Mot. at 13. Mogul has the burden to establish a claim under New York labor law; to do that, he must establish a right to the wages he claims NYPR illegally deducted; and to do *that*, he has to establish that he was terminated "without cause" under the terms of CBA. CBA at 37, 40; *see, e.g.*, *Tierney v. Capricorn Invs., L.P.*, 189 A.D.2d 629, 632 (N.Y. App. Div. 1993) ("The plaintiff cannot assert a statutory claim for wages under the Labor Law if he has no enforceable contractual right to those wages"). There is nothing "defensive" here; Mogul must rely on and interpret the CBA to make out any sort of claim at all, so that claim is preempted.

### C. Mogul's Claim For Breach Of The Covenant Of Good Faith And Fair Dealing Is Preempted Because It Relies On The CBA.

Mogul explicitly asserts that "Defendants breached their obligations under both the WNYC Standards of Employee Conduct and the CBA" and that "Defendants' actions deprived plaintiff of

the benefits to which he was entitled under these agreements including advance notice of his termination, confidentiality, and severance pay and benefits." Compl. ¶¶ 192–93. These allegations alone establish that Mogul's claim is preempted, because his claim depends directly and indirectly on the CBA. Indeed, one of the Supreme Court's seminal cases on LMRA preemption recognized that claims for breach of the covenant of good faith and fair dealing will usually be preempted, because "it is a question of federal contract interpretation whether there was an obligation under [the] labor contract" to provide the supposed benefits in question. *Allis-Chalmers*, 471 U.S. at 215.

Mogul tries to avoid this obvious pratfall by ignoring part of his claim. He says he relies not on the CBA but on the "WNYC Standards of Employee Conduct," which are not provided, quoted, or otherwise described in his Complaint. Mot. at 14; Compl. ¶ 189. Even if these "Standards" were somehow adequately presented in the Complaint, Mogul relies on them only for his assertion that Defendants breached some sort of "confidentiality." Compl. ¶ 189 His claim, as related to notice of termination, severance pay, and benefits, is again dependent entirely on the CBA. *Id.* ¶ 190. So at most, Mogul's allegations regarding the WNYC standards are simply irrelevant; his claim would require interpretation of the CBA, even if these hypothetical WNYC standards did not.

What is more, Mogul's entire claim for a breach of covenant of good faith and fair dealing *necessarily* requires substantial interpretation of the CBA. In New York, no "obligation may be implied [by the covenant] that would be inconsistent with other terms of the contractual relationship." *1357 Tarrytown Rd. Auto, LLC v. Granite Props., LLC*, 142 A.D.3d 976, 977 (N.Y. App. Div. 2016). Thus, Mogul would have to establish that nothing in the CBA contradicts whatever obligations he believes are implied by the CBA or other contractual agreements between

the parties. Mogul's claim would drag the Court neck-deep into the CBA, which means his claim is preempted.[3]

### D. Mogul's Claim For Intentional Infliction Of Emotional Distress Is Preempted Because Interpretation Of The CBA Is Necessary To Determine Whether Defendants Engaged In Any "Wrongful" Conduct.

Mogul's emotional distress claim, too, substantially depends on the CBA. Claims for intentional infliction of emotional distress require, *inter alia*, "extreme and outrageous conduct." *Howell*, 81 N.Y.2d at 121. In his Complaint, Mogul describes NYPR's supposedly "false accusation of plagiarism and termination of employment based on such a false accusation" as "extreme and outrageous conduct." Compl. ¶ 202. But to determine whether Mogul's termination was "in any way wrongful," the Court would have to "examin[e] the CBA provisions" regarding terminations of reporters. *Adonna*, 485 F. App'x at 447–48. The CBA provides that NYPR can terminate reporters "with or without cause," reinforcing NYPR's discretion in this area. CBA at 40. Thus, because NYPR "has the right to discharge [Mogul], the exercise of that right cannot lead to a claim for infliction of emotional distress, however distressing the discharge may be." *Howell*, 81 N.Y.2d at 125.

Of course, Mogul might try to dispute the plain terms of the CBA, but that is the point. Whether NYPR's actions are "condoned by the terms of the collective bargaining agreement" is the relevant question, so his claim is preempted because it "requir[es] interpretation of the … CBA." *Leonel Cruz v. United Auto. Workers Union Loc. 2300*, No. 18-cv-0048, 2019 WL

---

[3] Mogul's claim is also odd in that it appears to directly assert breaches of contract. Compl. ¶ 192 ("Defendants breached their obligations under both the WNYC Standards of Employee Conduct and the CBA."). Any breach of contract claim is obviously preempted; Mogul appears to have *labeled* his claim a breach of the covenant of good faith in an effort to plead around preemption, even as his actual claim is simply one for breach. Regardless, as the Supreme Court long ago made clear, the covenant of good faith and fair dealing is not a way around LMRA preemption. *Allis-Chalmers*, 471 U.S. at 215.

3239843, at *23 (N.D.N.Y. July 18, 2019) (citation omitted); *see also*, *e.g.*, *Buttigieg v. 40 W. 67th St. Corp.*, No. 17-cv-620, 2017 WL 5515942, at *2 (S.D.N.Y. Apr. 24, 2017) (claim for intentional infliction of emotional distress, based on employer's order to work in an "allegedly unsafe and unlawful work assignment," is preempted because it would "require interpretation of the CBA").

In his Motion, Mogul again tries to forget half of what he asserted in his Complaint. He focuses on his allegations of defamation as the source of "extreme and outrageous conduct," ignoring that he also alleged that the termination (governed by the CBA) constituted part of the "extreme and outrageous conduct." Mot. at 15–16. This does not work; even if Mogul relies on *more than* the CBA, the claim is still preempted where the Court has to engage in "interpretation of the CBA," *Vera*, 335 F.3d at 115, which it would have to do to determine whether Mogul's termination was "in any way wrongful," *Adonna*, 485 F. App'x at 447–48.

Moreover, Mogul *cannot* rely on allegations of defamation. Under New York law, "a cause of action for intentional infliction of emotional distress should not be entertained 'where the conduct complained of falls well within the ambit of other traditional tort liability.'" *Sweeney v. Prisoners' Legal Servs. of N.Y., Inc.*, 146 A.D.2d 1, 7 (N.Y. App. Div. 1989) (citation omitted) (dismissing claim for intentional infliction of emotional distress where the supposedly outrageous conduct was defamation). The "limitation on [duplicative] IIED claims 'has been consistently applied' to bar claims of IIED in both New York State and federal courts." *Allam v. Meyers*, No. 09-cv-10580, 2011 WL 721648, at *8 (S.D.N.Y. Feb. 24, 2011) (citation omitted). Defamation cannot, then, be "extreme and outrageous conduct," which confirms that Mogul's Complaint depends on the supposedly wrongful firing. Whether that termination is "wrongful," in turn depends on the CBA, meaning that Mogul's claim is preempted.

**E.    Mogul's Claim For Defamation Is Preempted Because The CBA Provides NYPR The Authority To Set Editorial Policies That Inform Whether Mogul, In Fact, Plagiarized.**

Finally, Mogul's defamation claim is preempted because it, too, "substantially depend[s]" on the CBA. *Vera*, 335 F.3d at 114 (citation omitted).  To make out a defamation claim, Mogul must establish that Defendants made false statements—"falsity is a *sine qua non*" of defamation. *Brian*, 87 N.Y.2d at 51.  Here, Mogul asserts that Defendants made a number of supposedly false statements, all surrounding the core accusations that Mogul committed plagiarism, which violated NYPR policies.  Compl. ¶¶ 99, 141.  But whether Mogul did so depends on the CBA's terms that grant NYPR discretion in setting company policy, including its editorial policies that protect its credibility and integrity as a news organization.

The CBA provides that it "is the right of [NYPR] to determine the standards of services," take "disciplinary action," and "establish reasonable rules and regulations not inconsistent with the terms of this agreement."  CBA at 9.  And as Mogul himself alleges, the NYPR Editorial Policy and Guidelines declare that "[n]o material from another source should ever be included verbatim, or substantially so, without attribution."  Compl. ¶ 117.  Thus, under the CBA, NYPR has the discretion to define plagiarism, *has* defined plagiarism, and Mogul's conduct, by his own allegations, fits within NYPR's definition of plagiarism.  Defendants' alleged statements that Mogul plagiarized are, accordingly, not *false*.

Mogul will, again, challenge NYPR's authority to define "plagiarism" under the CBA, but any such legal dispute is "inextricably intertwined" with the CBA's terms, *Panczykowski*, 2 F. App'x at 161 (citation omitted), which grant NYPR the discretion to define "standards" and enforce them.  "Because the veracity of the statements cannot [be determined] without interpreting the [CBA]," the defamation claim is "pre-empted."  *Fasciana v. Coia*, No. 97-cv-0833A, 2000 WL 424200, at *2 (W.D.N.Y. Mar. 31, 2000).

## II. THE COURT SHOULD REJECT MOGUL'S ARGUMENTS REGARDING TIMELINESS, SUPPLEMENTAL JURISDICTION, AND PREMATURE AMENDMENT.

Mogul's remaining arguments lack merit. First, Mogul argues that Defendants' removal was untimely, but that is blatantly wrong. Mot. at 2–4. Second, Mogul asks the Court to remand his defamation claim even if the Court finds the other claims support federal jurisdiction, but that makes no sense as the claims all arise from the same series of events. *Id.* at 16. Third, Mogul asks to amend his Complaint before the Court "decid[es] to retain jurisdiction." *Id.* at 17. The Court should take this confusing request for what it is: an admission that Mogul knows his claims are preempted.

**1.** Mogul asserts that Defendants' Notice of Removal was untimely, but this argument is frivolous. Mogul does not dispute that Defendants were served on June 9, 2021. Thirty days from service (the deadline for removal, *see* 28 U.S.C. § 1446(b)(1)) is July 9, and Defendants removed the action on July 8. *See* Notice. Mogul argues that service is not the appropriate start date under 28 U.S.C. § 1446(b)(1), but the Supreme Court has expressly held that it is. *Murphy Bros, Inc.*, 526 U.S. 344. Mogul's confusion on this point is particularly inexcusable since Defendants cited *Murphy Bros* in their Notice of Removal. *See* Notice ¶ 4.

**2.** The Court should also reject Mogul's request that the Court remand just his defamation claim, even if the Court finds his other claims preempted—that would clearly be a case where the Court should exercise supplemental jurisdiction. 28 U.S.C. § 1367(a). The default rule is that federal courts should retain jurisdiction over state law claims that are part of the "same case or controversy" as federal claims. *Davila v. Gutierrez*, 330 F. Supp. 3d 925, 943 (S.D.N.Y. 2018), *aff'd*, 791 F. App'x 211 (2d Cir. 2019). That is clearly the case here, and Mogul does not suggest otherwise.

Instead, Mogul asserts that the defamation claim "substantially predominates" over his other claims and would involve "different" and "more extensive" discovery. Mot. at 16; *see* 28 U.S.C. § 1367(c). This argument makes no sense. *All* of Mogul's claims arise from and depend on the same events: his plagiarism and termination. Although there are numerous independent reasons that each of Mogul's claims fail—including, most obviously, his mistaken understanding of the CBA—he cannot succeed on any of them without his fundamental contentions that he did not plagiarize and that Defendants were wrong to say he did. Put another way, Mogul's plagiarism precludes *all* of his claims, so his defamation claim does not "substantially predominate[]" over any of them. 28 U.S.C. § 1367(c). Instead, they are all connected to the same "factual determinations." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 247 (2d Cir. 2011). Again, Mogul's claims all fail for other reasons as well, including, most importantly, the terms of the CBA; but they are also connected by his plagiarism, so there is no cause to separate the defamation claim, even if it were not preempted.

Moreover, "[e]ven 'where at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values . . . [of] economy, convenience, fairness, and comity.'" *Davila*, 330 F. Supp. 3d at 943 (quoting *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004)). Here, however, these factors all support *retaining* jurisdiction. Keeping the claims together is more economical, especially where any necessary discovery would be directed at similar facts in either case. It is obviously more convenient for the parties to litigate in a single forum (especially given that the related case is already being litigated in this same forum). It would be unfair to split up the claims, where that would risk conflicting judgments or orders. Finally, there are no comity concerns because New York has very little interest in the case: federal law

covers most of the claims, and what remains would require, at most, standard application of New York's defamation law, not a novel state law analysis.

**3.** The Court should also reject (or at least ignore) Mogul's bizarre amendment request, which is paradoxical. If the Court were to hold Mogul's "claims preempted by the LMRA," it could hardly afford Mogul the opportunity to amend "prior to" its decision on jurisdiction, Mot. at 17, since those decisions are one and the same. *Vera*, 335 F.3d at 114 ("[I]f plaintiff's state 'claims are preempted by section 301, federal jurisdiction exists.'" (citation omitted)). If Mogul wants to amend his Complaint in response to the Court's ruling, he can request permission to amend at that time, *see* Fed. R. Civ. P. 15(a)(2).

## CONCLUSION

The Court should deny Mogul's Motion to Remand.

Dated: August 16, 2021                    */s/ Wendy Butler*                    

Wendy Butler
Justin Martin
JONES DAY
250 Vesey Street
New York, New York 10281
(212) 326-7822
wbutler@jonesday.com


*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Opposition (and attachments) was filed on August 16, 2021, via the Court's electronic filing system, which will deliver copies of the filings to counsel of record.

*/s/ Wendy Butler*_____

Wendy Butler
JONES DAY
250 Vesey Street
New York, New York 10281
(212) 326-7822
wbutler@jonesday.com
