UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
FRED MOGUL,

        Plaintiff,

 -against-

NEW YORK PUBLIC RADIO, WNYC,
and AUDREY COOPER,
        Defendants.
------------------------------------------------------------------ X

No. 21-cv-5882-CM
[rel. 21-cv-04972-CM]

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO REMAND PURSUANT TO 28 U.S.C. §§ 1446 & 1447**

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400
*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ..................................................................................................................... 1

    I. Defendants Failed to Timely Remove Pursuant to 28 U.S.C. § 1446(b) ........... 1

    II. The Court Lacks Subject Matter Jurisdiction ................................................... 4

        A. Plaintiff's Claims Are Not Preempted by the LMRA ............................. 5

            1. Defamation (First Cause of Action) ..................................................... 5

            2. Wrongful Termination (Second Cause of Action) ............................... 8

            3. New York Labor Law (Third Cause of Action) ................................... 8

            4. Breach of Implied Covenant of Good Faith (Fourth Cause of Action) ............. 8

            5. Intentional Infliction of Emotional Distress (Fifth Cause of Action) ................ 8

        B. Supplemental Jurisdiction and Amendment ............................................ 9

CONCLUSION ................................................................................................................ 10

# TABLE OF CASES

**Cases**

*Am. Mktg. & Fulfillment v. Inside Mktg. Grp., LLC*, No. 20-CV-05371 (JMA) (ST), 2021 U.S. Dist. LEXIS 97090 (E.D.N.Y. May 21, 2021) .................................................................................. 2

*Brooklyn Hosp. Ctr. v. Diversified Info. Techs., Inc.,* 133 F. Supp. 2d 197 (E.D.N.Y. 2001) ....... 2

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) .............................................................. 10

*Correnti v. Bertram D. Stone, Inc.*, No. 13-CV-3698 (KBF), 2013 U.S. Dist. LEXIS 100666 (S.D.N.Y. July 17, 2013) ......................................................................................................... 5

*Fasciana v. Coia*, No. 97-cv-0833A, 2000 WL 424200 (W.D.N.Y. Mar. 31, 2000) ..................... 8

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112 (2d Cir. 2007) .. 4, 10

*Murphy Bros, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) ..................................... 2

*Panczykowski v. Laborers' Int'l Union of N. Am.*, 2 F. App'x 157 (2d Cir. 2001) ........................ 7

*Rodriguez v. Smith*, No. 16-CV-107 (CBA), 2016 U.S. Dist. LEXIS 36439, 2016 WL 4249832 (E.D.N.Y. Mar. 18, 2016) ................................................................................................... 3, 4

*Russell v. S. Shore Indus.*, No. 19-CV-8494 (VSB), 2019 U.S. Dist. LEXIS 218119 (S.D.N.Y. Dec. 18, 2019) ............................................................................................................................ 3, 4

*Spehar v. Fuchs*, No. 02-cv-9352 (CM), 2003 U.S. Dist. LEXIS 10406 (S.D.N.Y. June 17, 2003) .................................................................................................................................................. 9

*Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177 (S.D.N.Y. 2003) ........... 4

*Tsitrin v. Jacobs*, 2012 U.S. Dist. LEXIS 53211 (S.D.N.Y. Apr. 9, 2012) ................................... 4

*Ward v. Aetna Life Ins. Co.*, 98-CV-0542E(Sc), 1999 U.S. Dist. LEXIS 5133 (W.D.N.Y. Apr. 7, 1999) ....................................................................................................................................... 4

*Williams v. Connell*, No. 12-cv-3593, 2017 U.S. Dist. LEXIS 101289 (E.D.N.Y. June 28, 2017) 4

*Wynn v. AC Rochester*, 273 F.3d 153 (2d Cir. 2001) .................................................................. 6

**Statutes**

28 U.S.C. § 1446(b) ................................................................................................................ 1, 2

**Rules**

CPLR § 312-a ............................................................................................................................. 3

## PRELIMINARY STATEMENT

This is a defamation action asserting exclusively state law claims and properly pursued in New York State Supreme Court. The facts here center on Defendants' false statements, disseminated to the entire New York Public Radio ("NYPR") Newsroom that Plaintiff, an 18-year veteran WNYC reporter, committed plagiarism and engaged in deception. The factual dispute involves Plaintiff's inclusion of two sentences of Associated Press ("AP") copy in an unpublished, draft story containing a link to the AP article and an attribution tagline crediting AP. Defendants—who, we submit, failed to timely move for removal—assert that Plaintiff's claims depend upon interpretation of NYPR's Collective Bargaining Agreement ("CBA"), converting them to federal claims subject to this Court's jurisdiction. The Court should remand this case based on Defendants' untimely removal alone. But even if the removal were timely, there was and is no basis for federal jurisdiction. Core to many of Defendants' arguments for federal jurisdiction are assertions that Plaintiff "may" or "will" or "would" make in the future, relying on the CBA. These arguments are not persuasive. The claims presented in the Complaint, with one exception, do not depend on the CBA. And none of Plaintiff's claims involve interpreting disputed terms of the CBA. In any case, Plaintiff has now amended the Complaint as of right to remove putative preempted claims and to remove altogether any reference to the CBA, to underline the fundamentally state-law nature of this case. *See* Plaintiff's First Amended Complaint, Dkt. No. 22. To the extent there may have been preempted claims in the initial Complaint, the First Amended Complaint ("FAC") squarely removes this case from the Court's jurisdiction. The case should be remanded.

## ARGUMENT

**I.  Defendants failed to timely remove pursuant to 28 U.S.C. § 1446(b)**

Defendants bury their response to what they characterize as Plaintiff's "bizarre"

1

untimeliness argument in one brief paragraph at the end of their opposition. Despite their argument that the timeliness of their removal is beyond question because of the Supreme Court decision in *Murphy Bros, Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344 (1999), caselaw in this Circuit since *Murphy Bros.* suggests otherwise.

> 28 U.S.C. § 1446 (b)(1) provides:
>
> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

*Murphy Bros.* stands for two propositions relevant to this dispute: *first*, that if the complaint is furnished to the defendant after a summons, the period for removal runs from the defendant's receipt of the complaint; and *second,* that the 30-day period runs from the date the complaint is "served." *See* 526 U.S. at 351–52, 355. *Murphy Bros.* involved receipt of a "courtesy copy" of a complaint by fax unattended by any other service. But this case involves receipt of a Summons with Notice issued pursuant to New York's unique statutory provision allowing for commencement of a civil actions via summons with notice, without service of a complaint. Since *Murphy Bros.,* courts in this Circuit have held that New York's summons with notice qualifies as an "initial pleading" for purposes of the federal removal statute. *See, e.g., Am. Mktg. & Fulfillment v. Inside Mktg. Grp., LLC*, No. 20-CV-05371 (JMA) (ST), 2021 U.S. Dist. LEXIS 97090, at *5 (E.D.N.Y. May 21, 2021) (citing *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 205 (2d Cir. 2001)); *Brooklyn Hosp. Ctr. v. Diversified Info. Techs., Inc.,* 133 F. Supp. 2d 197, 201 (E.D.N.Y. 2001) (distinguishing *Murphy Bros.*). Defendants do not dispute this. Defendants suggested service by mail pursuant to CPLR § 312-a, and do not dispute that they agreed to receive the Summons with Notice by email or that they received the Summons with Notice by

email on May 12, 2021 (or the hard copies mailed on May 13, 2021). (*See* Rollings Decl., Ex. 2, Dkt. 17.2. & Ex. 3, Dkt. No. 17.3.)

Although Defendants were in "receipt" of the Summons with Notice on May 12, 2021, they assert that they were "served" with it on June 9, 2021, the date they "returned"—via UPS shipping—an Acknowledgement of Receipt of Service (dated June 8, 2021) under New York CPLR § 312-a, and that the Court should calculate 28 U.S.C. § 1446's deadline from June 9, 2021 (*See* Defs.' Opp. to Pl.'s Mot. for Remand ("Opp.") at 8, 22). Under CPLR § 312-a, service is defined as "complete" not on the day that a party receives the papers but rather "on the date the signed acknowledgement of receipt is mailed or delivered to the sender." This is a particular feature of New York law which, if Defendants' timeliness argument is accepted, would essentially operate to enable Defendants to extend the removal period beyond the statutory 30 days; no such acknowledgement requirement exists under Rule 4 of the Federal Rules of Civil Procedure. The issue here is whether service must be "complete" as defined in New York law to constitute "receipt . . . through service or otherwise" and trigger the removal deadline.

"[M]any courts in this circuit have held that '[t]he timeliness of removal presents a question of federal and not state law[,] and [w]hat may be proper and complete service of process under state law has no bearing on whether a defendant has received such notice that the 30-day clock set forth in 28 U.S.C. [§] 1446(b) has been triggered.'" *Russell v. S. Shore Indus.*, No. 19-CV-8494 (VSB), 2019 U.S. Dist. LEXIS 218119, at *10 (S.D.N.Y. Dec. 18, 2019) (considering CPLR § 308(2)'s service requirements) (citing *Rodriguez v. Smith*, No. 16-CV-107 (CBA), 2016 U.S. Dist. LEXIS 36439, 2016 WL 4249832, at *3 (E.D.N.Y. Mar. 18, 2016) (considering service under New York Vehicle and Traffic Law § 253) (internal quotation marks omitted)).

*Russell* and *Rodriguez* addressed the effect of New York-specific service requirements

3

under different state procedural rules, but the same analysis applies to CPLR § 312-a. Though there are cases holding that service must be "complete" according to New York law to start the removal clock, *see, e.g.*, *Williams v. Connell*, No. 12-cv-3593, 2017 U.S. Dist. LEXIS 101289, at *12 (E.D.N.Y. June 28, 2017); *Ward v. Aetna Life Ins. Co.*, 98-CV-0542E(Sc), 1999 U.S. Dist. LEXIS 5133, at *3 (W.D.N.Y. Apr. 7, 1999); *Tsitrin v. Jacobs*, 2012 U.S. Dist. LEXIS 53211, at *8 (S.D.N.Y. Apr. 9, 2012), "[f]ederal law . . . determines whether the elements of removal jurisdiction have been satisfied . . . The removal statute . . . was intended to be uniform in its application, unaffected by local law definition[.]" *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 181 (S.D.N.Y. 2003). Plaintiff submits that the Court should conclude that the relevant trigger for removal purposes is the day on which the initiating papers were "received" in the normal sense of the word, not the date on which New York law deems service "complete."

Defendants' time to remove should be calculated from May 12, 2021, the date on which they received the Summons with Notice upon agreement of their counsel. Accordingly, the removal deadline expired on June 11, 2021, making Defendants' July 8, 2021 removal untimely. Failure to timely remove must "lead[] to an automatic defeat of the removal petition." *Rodriguez*, 2016 U.S. Dist. LEXIS 36439, at *4 (citing *Frontier Park Co., LLC v. Contreras*, 35 F.Supp.3d 264, 267 (E.D.N.Y. 2004)). And "out of respect for the limited jurisdiction of the federal courts and the rights of states, [courts] must resolve any doubts against removability." *Russell*, 2019 U.S. Dist. LEXIS 218119, at *11 (citing *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007)).

II. **The Court lacks subject matter jurisdiction**

Even if Defendants had timely removed, this case is not properly in federal court. This is

fundamentally a defamation case, governed by state law. It does not include any federal claims. Defendants are essentially arguing that if an employee is a member of a union which has a collective bargaining agreement with an employer, that employee cannot assert state common law claims against the employer without such claims being preempted and converted into federal claims under the Labor Management Relations Act ("LMRA"). (Opp. at 1–3.) Although they acknowledge that such claims must be "substantially dependent" upon analysis of the CBA to be preempted, their arguments as to what constitutes "substantial dependence" are not persuasive. Mere mention of the CBA or its terms in a complaint does not transform a state case into a federal case.

### A. Plaintiff's claims are not preempted by the LMRA

"The burden of proof is on the party seeking to remove the action, and all doubts are resolved against removability." *Correnti v. Bertram D. Stone, Inc.*, No. 13-CV-3698 (KBF), 2013 U.S. Dist. LEXIS 100666, at *6 (S.D.N.Y. July 17, 2013). Defendants have failed to carry their burden to show that each of Plaintiff's state law claims is preempted by § 301 of the LMRA.

#### 1. Defamation (First Cause of Action)

Defendants present their circular defamation argument last, even though Plaintiff's defamation claim is clearly the predominant claim in the Complaint. Their argument contains overbroad declarations such as: "to determine whether anything that anyone said was 'false' . . . the Court will have to interpret the CBA." (Opp. at 3.) Also: "under the CBA, NYPR has the discretion to define plagiarism, *has* defined plagiarism, and Mogul's conduct, by his own allegations, fits within NYPR's definition of plagiarism. Defendants' alleged statements that Mogul plagiarized are, accordingly, not *false*." (Opp. at 21.) Plaintiff takes issue with the quoted statements, and other similarly overreaching statements in Defendants' Opposition, as well as with

Defendants' misleading and incomplete recitation of facts, Opp. at 6–8, but these issues are not before the Court. Rather, the question is whether Mogul's defamation claim is preempted because it "substantially depends" on interpretation of the CBA. (Opp. at 21.) It does not.

The defamation claim is based on an accusation of plagiarism, as well as accusations of deception and other false statements of fact. The word "plagiarism" is not even mentioned in the CBA. Nor, upon information and belief, was the CBA invoked or mentioned by Defendant Cooper either to Plaintiff during his termination meeting or later in the course of her defamatory statements disseminated to the Newsroom staff. (Compl. ¶¶ 68–106; FAC ¶¶ 68-119.) The complained-of defamatory statements occurred after Plaintiff's termination and the defamation claim stands entirely independent of claims arising from the termination.

Arguing that the defamation claim will somehow turn on Defendants' authority to establish rules and regulations derived from the CBA, Defendants state that "Mogul will, again, challenge NYPR's authority to define 'plagiarism' under the CBA." (Opp. at 21.) But that statement reflects a misunderstanding of Plaintiff's state law defamation claim, which turns not on interpretation of the contract or, we submit, on NYPR's alleged authority to define plagiarism, but instead "upon the employer's behavior, motivation, and statements, as well as plaintiff['s] conduct." *Wynn v. AC Rochester*, 273 F.3d 153, 159 (2d Cir. 2001) (declining to find state tort claims preempted by § 301). Defendants themselves, on the last page of their Opposition, refer to this claim as requiring "at most, standard application of New York's defamation law." (Opp. at 24.) In any event, Defendants cannot base a preemption claim on a hypothetical argument Plaintiff has not made.

As a factual matter, Defendants' repeated assertion that "Mogul committed plagiarism" does not make it so. (Opp. at 1, 21.) It is also at odds with the requirement to accept the truth of

6

the allegations in the Complaint for purposes of this motion. (Opp. at 4.)[1] And Defendants' statement that "whether Mogul did so depends on the CBA's terms" is simply wrong. (Opp. at 21.) In any event, analysis and/or determination of what constitutes plagiarism is premature on this motion. It may involve many factors, including attribution[2] (at the bottom of Plaintiff's draft, Ex. C to the Complaint), byline (to be inserted by the editor), WNYC (and industry) policy and practice with respect to use and attribution of AP copy (Ex. H to the Complaint), and possibly AP license or contractual issues. For purposes of this motion, the issue of what does and does not constitute plagiarism does not require interpretation of, or even reference to the CBA, much less substantial interpretation of the CBA. Defendant Cooper's self-declared "definition" of plagiarism is no more an issue arising under the CBA than her false accusations of deception, and her factually false denial that Plaintiff's draft contained an attribution line, among other false statements. These are factual issues to be determined by a jury, having nothing to do with the CBA.

Defendants cite no authority supporting their argument. Their re-citation of *Panczykowski v. Laborers' Int'l Union of N. Am.*, 2 F. App'x 157, 161 (2d Cir. 2001), in which the falsity of the alleged defamatory statement was found to be dependent on interpretation of the term "barred

---

[1] Defendants' first background statement is also circular: "Mogul's allegations must generally be accepted as true, but because his Complaint 'relies heavily upon' the CBA . . . CBA is 'integral' to the complaint and [the court may] consider its terms." (Opp. at 4.) But the alleged "heavy reliance upon the CBA" is the issue to be determined on this motion.

[2] While there is no definition of plagiarism in NYPR's Editorial Policy and Guidelines, there is reference to "attribution." (Compl. ¶ 117; FAC ¶ 130; Opp. at 7.) The Complaint alleges that Plaintiff's draft story contained an AP attribution line. (Compl. ¶ 44; FAC ¶ 44.) Ex. C to the Complaint and FAC shows the attribution. The Complaint alleges that NYPR's longstanding policy and practice has been to credit AP in an attribution line at the bottom of the story or joint byline at the top. (Compl. ¶ 107; FAC ¶ 120.) *See also* Compl. Ex. D; FAC Ex. D. This practice was confirmed by Newsroom staff at the February 5 meetings. (Compl. ¶¶ 2, 55–56, 76–78, 83, 90, 101–03, 107–15, 129; FAC ¶¶ 2, 55–57, 76–78, 84, 91, 99–105, 120-128, 136.) Examples of published stories in which AP copy was used and attributed as it was in Plaintiff's unpublished draft are shown in Ex. H. Defendants ignore these allegations and exhibits.

conduct" as used in the CBA, does not make it more apposite now than before. Their new citation to *Fasciana v. Coia*, No. 97-cv-0833A, 2000 WL 424200, at *2 (W.D.N.Y. Mar. 31, 2000) is equally unavailing insofar as the defamation claim there, like in *Panczykowski*, turned on whether the union was "controlled or influenced by members or associates of organized crime" in violation of a labor agreement. Unlike these cases, Plaintiff's defamation claim in no way "turns on" an interpretation of any part of the CBA. Accordingly, Plaintiff's defamation claim is not preempted.

### 2. Wrongful Termination (Second Cause of Action)

Plaintiff's wrongful termination claim referred to agreements external to the CBA—"NYPR standards and policies of confidentiality," "NYPR's own journalistic standards and professional ethics," "NYPR contracts [and] covenants, [and] handbooks." (Mot. at 10) (citing Compl. ¶¶ 175–78). Regardless, this claim has been eliminated in the FAC.

### 3. New York Labor Law (Third Cause of Action)

Plaintiff's New York Labor Law ("NYLL") claim referred to the CBA for the amount of Plaintiff's severance. Though this claim did not depend on "interpretation" of the CBA, the FAC does not include it.

### 4. Breach of Implied Covenant of Good Faith (Fourth Cause of Action)

Although this claim, too, did not depend on interpreting the CBA, it has been eliminated.

### 5. Intentional Infliction of Emotional Distress (Fifth, now Second, Cause of Action)

Defendants' argument that analysis of Plaintiff's Intentional Infliction of Emotional Distress ("IIED") claim requires interpretation of the CBA hangs on Defendants' misleading assertion that Plaintiff claims that it is his termination which constitutes the requisite extreme and outrageous conduct. (Opp. at 19–20.) However, paragraph 199 of the Complaint states: "The *facts and circumstances of defendants' termination* of plaintiff's employment constitute intentional and

reckless tortious conduct under applicable New York law." (emphasis added). Subsequent allegations describe the false accusations of plagiarism and deception and other false statements, together with the termination of employment based on such false accusations, as constituting extreme and outrageous conduct calculated to damage Plaintiff's name, reputation and career as a journalist as well as severe emotional distress. The issue of whether the IIED claim as pleaded is duplicative of the defamation claim is an issue for motion or trial, not for preemption. The eventual merits of the claim—*e.g.,* whether plaintiff can "rely on allegations of defamation" to make out his IIED claim—are not relevant to whether this Court has jurisdiction. (Opp. at 20.) Like the defamation claim, it is a straightforward state law claim which has nothing to do with the CBA. (Mot. at 15–16.) Defendants have failed to meet their burden to show that this claim is preempted.

### B. Supplemental Jurisdiction and Amendment

Defendants' arguments as to "premature" amendment, that the Court should "ignore" Plaintiff's reference to amendment, and that Plaintiff "can request permission to amend" are, to use Defendants' word, bizarre. Plaintiff can plainly amend his Complaint as of right. Fed. R. Civ. P. 15(a)(1). Now that the Complaint has been amended to remove any reference to the CBA and putative preempted claims, the Court has no basis for jurisdiction, supplemental or otherwise. *Spehar v. Fuchs*, No. 02-cv-9352 (CM), 2003 U.S. Dist. LEXIS 10406, at *29 (S.D.N.Y. June 17, 2003) ("[W]hen a post-removal amendment leaves a federal court with only state law claims, and where the federal court has had no substantive involvement in the case, the values of judicial economy, convenience, fairness, and comity weigh in favor of remanding to state court.").

Defendants claim that, under the "default rule" for supplemental jurisdiction, the federal court should retain jurisdiction over state law claims that are part of the "same case or controversy"

as federal claims. (Opp. at 22.)³ But here there are no federal claims and the Court has had no substantive involvement in the case. To the extent Defendants refer to the claims in the related union case (Opp. at 23), the cases are very different—the union case involves a demand for arbitration and "cause" for termination under the CBA,⁴ while this case turns on post-termination defamatory statements. Fact, expert and damages discovery will be substantially more extensive in this case. The relief sought in the two cases is also different. If the union obtains an order compelling arbitration, this Court will have no interest at all in either case. The union demands $104,000 in severance pay. Plaintiff seeks compensatory damages, as well as punitive damages. The union case is non-jury. Plaintiff is entitled to a trial by jury. Defendants' cavalier assessment that "there are no comity concerns because New York has very little interest in the case: federal law covers most of the claims and what remains would require, at most, standard application of New York's defamation law, not a novel state law analysis," is incorrect and does not afford the requisite respect for the rights of states, referred to by the circuit court in *MTBE Prods. Liab. Litig.*, 488 F.3d at 124, or for Plaintiff's choice of forum. (Opp. at 23–24.) However "unfair" Defendants may find it, it is certainly no less convenient. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

## CONCLUSION

For these reasons, the Court should remand Plaintiff's Complaint to state court.

---

³ The court in the cited case, *Davila v. Gutierrez*, 330 F. Supp. 3d 925 (S.D.N.Y. 2018), *aff'd*, 791 F. App'x 211 (2d Cir. 2019), recognized that it *lacked* supplemental jurisdiction over state law claims where the federal claims were dismissed, and no discovery had taken place. The court concluded that "[r]esolution of the state-law claims in state court will avoid 'needless decisions of state law' by th[e] federal [c]ourt, which promotes the interests of comity and justice." *Id.* at 944.

⁴ *See* SAG-AFTRA's Mem. of Law at 17–20, filed in 21-cv-04972 (CM), Dkt. No. 22.

Dated: New York, New York
August 24, 2021

                                            Respectfully submitted,
                                            BELDOCK LEVINE & HOFFMAN LLP

                                            By: /s/ Cynthia Rollings
                                                 Cynthia Rollings
                                                 Luna Droubi
                                                 Rebecca Pattiz

                                            *Attorneys for Plaintiff*

# **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing Reply was filed on August 24, 2021, via the Court's electronic filing system, which will deliver copies of the filings to counsel of record.

                         /s/
                         Luna Droubi
                         Beldock Levine & Hoffman LLP
                         99 Park Ave., PH/26th Floor
                         New York, NY 10016
                         (212) 490-0400
                         crollings@blhny.com